**W. Willard WIRTZ, Secretary of Labor, Plaintiff-Appellant,**

v.

**POWELL KNITTING MILLS CO., Inc., Defendant.**

**Meinhard Commercial Corp., Respondent-Appellee.**

**No. 415, Docket 30457.**

United States Court of Appeals Second Circuit.

Argued April 26, 1966.

Decided May 13, 1966.

John A. Hughes, Regional Atty., U. S. Dept. of Labor, New York City (Charles Donahue, Sol., Samuel Gorin and David Reines, Attys., U. S. Dept. of Labor, on the brief), for plaintiff-appellant.

John F. LeViness, III, New York City (Harlan R. Harrison, Robert M. Callagy, and Pell, Butler, Curtis & LeViness, New York City, on the brief), for appellee.

Before SMITH, KAUFMAN and FEINBERG, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The Secretary of Labor appeals from an order of the United States District Court for the Eastern District of New York, Joseph C. Zavatt, Chief Judge, vacating a temporary restraining order issued against Powell Knitting Mills, Inc. and

against Meinhard Commercial Corp. Powell has not appeared.

As a general rule, it is true, the denying or vacating of a temporary restraining order is not appealable. Austin v. Altman, 332 F.2d 273 (2 Cir. 1964). But this is not always so. In the first place, the appellate court is not bound by what the parties or the District Court may call the order appealed from. That is not this case, for there is no doubt that the original ex parte order was a temporary restraining order. The order vacating it, therefore, though after a hearing, and contested, is an order vacating a temporary restraining order. Compare *Austin;* see also Grant v. United States, 282 F.2d 165 (2 Cir. 1960). But there is another reason in some cases for appealability of the granting, denial, or vacating of a temporary restraining order. Where dismissing the appeal may moot the underlying case for an injunction, the appeal should be heard. United States v. Wood, 295 F.2d 772, 776–778 (5 Cir. 1961), cert. den. 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1962); Woods v. Wright, 334 F.2d 369, 373–374 (5 Cir. 1964); Dilworth v. Riner, 343 F.2d 226, 229–230 (5 Cir. 1965). The rationale of these cases is that the matter is appealable not under 28 U.S.C. § 1292, dealing with injunctions, but rather under § 1291, under the collateral order doctrine, Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

Here dismissing the appeal, together with refusing to continue the stay ordered by Judge Lumbard, could very well moot the whole case, for Meinhard could dispose of the sweaters before Judge Zavatt acted on the request for a preliminary injunction. Hence the matter is appealable quite apart from the fact that both parties were heard on the motion, and that a hearing occurred. Compare *Dilworth,* 343 F.2d at 229.

On the merits, we find no error, and affirm the order vacating the temporary restraining order.

The vacated order prohibited the sale in interstate commerce of certain sweaters, produced by Powell, and acquired by Meinhard, a factor, when it foreclosed its lien. The prohibition was grounded on an asserted violation of § 6 and § 7 of the Fair Labor Standards Act, 29 U.S.C. §§ 201, 206, 207, in that 86 employees of Powell were not paid wages for the weeks ending February 18, February 25, and March 5, 1966, so that the sale of the sweaters would be a violation of § 15(a) of the Act, 29 U.S.C. § 215, if applicable, and enjoinable under § 17, 29 U.S.C. § 217. Powell had made an assignment for the benefit of creditors and was said to be insolvent. The unpaid wages totalled $8425. Section 15 makes it unlawful for "any person * * * to * * * sell in commerce * * * any goods in the production of which any employee was employed in violation of section 206 or section 207 of this title * * * "

Meinhard commenced financing Powell on September 2, 1965; cash advances said to have been around $700,000 were made, secured by inventory and equipment liens. Financing statements were filed. The liens covered inventory to be produced. Powell's financial condition worsened, and on about March 8, 1966, it ceased operations, and made an assignment for the benefit of creditors to the New York Creditmen's Adjustment Bureau, Inc. Meinhard foreclosed on its security, and the Secretary brought this action to prevent sale of the sweaters, some of which evidently were produced during the time when wages were not paid. Without deciding on the application for a preliminary injunction, Judge Zavatt vacated the restraining order he had previously signed ex parte. The Secretary applied for a stay pending appeal, which Judge Lumbard granted.

Under a literal, or, as Judge Zavatt called it, "wooden" reading of the Act, the government would be entitled to an injunction. Congress said "any person," not "any employer"; and it is also clear from that part of § 15 excepting from its scope some purchasers (those who relied in good faith on the written assurances

of the producer that the goods were produced in compliance with the Act) that other persons than employers, including other purchasers, are within § 15.

■■ Appellee's claim is that § 15 has no application to an insolvent concern, because the unlikelihood that it will continue to function means that no further violations are likely. We need not go so far; it is sufficient for this and similar cases to adopt a rule that frees from § 15 only a creditor foreclosing like Meinhard, for nonpayment of funds previously advanced. One purpose of making the sale illegal was to prevent adverse competitive effects on those who comply with the Act. Here there can be no connection between the asserted violation and any effects on competition. Another purpose of § 15 is to assure that the wage earners would be paid. With Powell insolvent and having made the assignment for the benefit of creditors, it is hardly possible that Powell may be forced to pay them. Hence the only way this purpose of the Act could be served would be to force Meinhard to pay them. But without some reasonably clear reference to the problem in the Act or in its history we find it hard to believe that Congress contemplated that the foreclosing creditor would have to pay the wage earners to avoid § 15. An exception should be read into § 15 for these particular facts.

If Powell were in bankruptcy proceedings, the solution would be easier. As appellee notes, restraining the sale in interstate commerce (until the wage claims were paid) comes close to giving such wage claims a priority over secured creditors contrary to the scheme of the Bankruptcy Act.

But even though Powell is not in bankruptcy, probably because Meinhard and other creditors chose to stay out of bankruptcy, somewhat similar though less forceful considerations exist as to the priorities set by state insolvency laws. While those priorities would fall before § 15 if applicable, we are unable to conclude that Congress intended such a result here.

■ We believe that there was no Congressional intent that concerns in Meinhard's position be within § 15. The purpose of forcing payment of wages should not apply to the creditor who advanced funds long before the default in wages, and who merely forecloses his lien, at least where the value of the goods acquired does not exceed the debt left unpaid. Since Meinhard is not giving present consideration, it can neither force Powell to make payment nor withhold wages from its payment and pay the wage earners itself. It already provided Powell with cash, part of which no doubt went for wages that were paid. Since the only reason to give effect to § 15 would be to force Meinhard to pay the wages, § 15 ought not apply to it, in a backhanded way of attacking its secured position.

The Secretary stresses the point that when the Congress desired to protect bona fide purchasers from the strict wording of the Act it found it easy to do so by amending the Act with appropriate safeguards. This would indeed be persuasive if there were indications that the present problem of the foreclosing secured creditor had been brought to the attention of the Congress. The argument loses force because this was apparently never done, and the Secretary's present contention is much weakened by the fact that since the enactment of the Act in 1938 neither he nor his predecessors appear to have so read the Act, in spite of the myriad of instances in which similar security titles must have been enforced.

The vacation of the temporary restraining order is affirmed. The stay heretofore entered is vacated.

FEINBERG, Circuit Judge (concurring in the result):

I concur in the result. However, I believe the order under attack is not appealable. The majority's exception to the holding of Austin v. Altman, 332 F.2d 273 (2d Cir. 1964) would swallow up the rule denying appealability from denial or vacation of a temporary restraining order. Under Fed.R.Civ.P. 65(b), a party

is entitled to a temporary restraining order only upon proof of the threat of "immediate and irreparable injury," and such an order can last no longer than twenty days, unless the party restrained consents. Erroneous denial of a temporary restraining order, by hypothesis, leaves a plaintiff unprotected from immediate and irreparable injury; hence, mootness will ordinarily follow unless immediate corrective appellate action is sought or a motion for a preliminary injunction is pressed in the trial court. The latter course can be taken as quickly as circumstances require and allows the trial court to consider the matter on a fuller record with a clear right of appeal to the parties thereafter. I believe this is the procedure envisaged by the Federal Rules of Civil Procedure and 28 U.S.C. § 1292(a) (1).

On the merits of the majority opinion, I agree completely.