**Ceola COOKS, Petitioner,**

v.

**Roland A. FOWLER, t/a J. Edward Fowler and Son, Respondent.**

**No. 24546.**

United States Court of Appeals, District of Columbia Circuit.

Nov. 13, 1970.

As Amended Jan. 12, 1971.

---

Mr. Richard B. Wolf, Washington, D. C., was on the petition and motion for petitioner. Mr. C. Christopher Brown, Washington, D. C., also entered an appearance for petitioner.

Mr. Herman Miller, Washington, D. C., entered an appearance for respondent.

Before FAHY, Senior Circuit Judge, and ROBINSON and ROBB, Circuit Judges, in Chambers.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This case came before us upon a petition for allowance of an appeal from, and a motion for a stay of, an order of the District of Columbia Court of Appeals denying petitioner relief from a protective order entered by the District of Columbia Court of General Sessions pending petitioner's appeal from a judgment awarding her landlord the possession of a leased apartment. We deal with these applications, and the complicated overlay of questions they generate, in the full context of the litigation which gave birth to the protective order in dispute. Doing so, we allow the appeal, and grant a conditional stay.

## I

Respondent, the landlord's rental agent, instituted an action in the Court of General Sessions seeking to recover possession of the apartment on account of petitioner's nonpayment of rent. Petitioner defended that action on the ground that conditions prohibited by the Housing Regulations[1] had persisted in the apartment from the inception of the lease.[2] Respondent subsequently gave petitioner notice to quit the premises and brought a second possessory action predicated upon petitioner's refusal to vacate.[3] Petitioner alleged in reply to the latter suit that the notice to quit was retaliatory, and for that reason could not be utilized as a basis for regaining possession.[4]

Over petitioner's objection, the Court of General Sessions consolidated the two cases for trial before a jury. The jury returned verdicts finding substantial housing code violations in the first action[5] but no retaliatory motive in the second. Thus, while petitioner defeated the landlord's bid in the one case, the landlord won the sought-after judgment for possession in the other.

On petitioner's motion, the trial judge then granted a stay of execution of respondent's judgment pending an appeal therefrom, but conditioned the stay upon petitioner's payment into the registry of the court of monthly sums equal to the rent that would have accrued thereafter under the terms of the lease as written. Petitioner, deeming the condition improper, did not meet it, and a writ of restitution eventually issued. The District of Columbia Court of Appeals denied petitioner's motion for a stay and summary reversal of the condition, whereupon petitioner submitted her applications here. We stayed petitioner's eviction temporarily to enable study and determination of her petition for allowance of an appeal and her motion for a stay throughout the pendency of the appeal sought.

## II

We may, at the outset, profitably distinguish what is and what is not before us at this time. Petitioner's appeal attacking the judgment awarded respondent in the second possessory action is not ripe for our present consideration. That appeal, we understand, is now before the District of Columbia Court of Appeals, which has not yet acted on the merits. Until the court does so, there is

1. Housing Regulations of the District of Columbia (1956), sometimes hereinafter cited "Housing Regulations."

2. See Javins v. First Nat'l Realty Corp., 138 U.S.App.D.C. 369, 428 F.2d 1071 (1970) ; Brown v. Southall Realty Co., 237 A.2d 834 (D.C.App.1968), appeal denied, No. 21,874 (D.C.Cir. July 16, 1968), cert. denied, 393 U.S. 1018, 89 S.Ct. 621, 21 L.Ed.2d 562 (1969).

3. See D.C.Code § 45–910 (1967). In the District of Columbia Court of Appeals,

respondent represented that the landlord intended to remove the apartment from the rental market.

4. See Edwards v. Habib, 130 U.S.App.D.C. 126, 397 F.2d 687 (1968), cert. denied, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969).

5. Respondent has not taken an appeal to challenge this finding, and the substandard condition of the apartment is not otherwise in dispute.

no occasion for review here of any issue encompassed thereby.[6]

■ The Court of Appeals' disposition of the controversy over the protective order, however, falls into a different category. It was a complete and final denial by that court of relief from the requirement of monetary deposits during the pendency of petitioner's appeal. That requirement, in turn, operating like a supersedeas, conditioned the stay, pending the appeal, of respondent's judgment for possession. Because the requirement was not met, a writ of restitution is outstanding, and only our temporary stay of eviction stands in the way of execution of the writ. We think, then, that the Court of Appeals' order with reference to this aspect of the litigation is presently appealable [7] to tender for this court's decision the issue over the propriety of the protective order.

### III

Confronting the petition for allowance of the appeal is the broad limitation we have imposed upon exercises of our jurisdiction to review actions of the District of Columbia Court of Appeals. "Allowance of an appeal from [that court] is not a matter of right, but of sound judicial discretion, and will be granted only where there are special and important reasons therefor." [8] In our view, however, the appeal petitioner proffers presents questions of general portent that are much too important to be declined.

Although, in our recent *Bell* decision,[9] we specified criteria for determinations on landlord's motions for pretrial protective orders, we have not had occasion to lend guidance with respect to protective orders pending appeal. And already within the past few years, we have witnessed a perceptible growth in the number of appeals in dispossession cases, and we see no reason for assuming a reversal of this trend, either in the District of Columbia Court of Appeals or here.[10] At the same time, stays of evic-

6. We are not aware of any authority to support a theory, nor is it argued, that the appealability, as a final collateral order, of the Court of Appeals' action in sustaining the Court of General Sessions' protective order, see note 7, *infra*, would carry over to make the main litigation on the merits also presently appealable.

7. With some regularity we have considered pretrial protective orders appealable, *e. g.*, Bell v. Tsintolas Realty Co., 139 U.S.App. D.C. 101, 430 F.2d 474 (1970), and we perceive no basis for distinguishing protective orders framed with a view to a prospective appeal. Both types seem to fall within the collateral order doctrine articulated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Compare Redding & Co. v. Russwine Const. Corp., 135 U.S.App.D.C. 153, 417 F.2d 721 (1969). Dispossession of the tenant for noncompliance with a protective order invariably threatens serious consequences for the tenant. It is unclear as to whether, after eviction, the main issues—which comprise the appeal on the merits—could survive a claim of mootness. Compare, *e. g.*, Wirtz v. Powell Knitting Mills Co., 360 F.2d 730 (2d Cir. 1966). But whether they could or not, it is certain that

eviction would disrupt, perhaps for a substantial period, an ongoing occupancy upon which the tenant insists as a matter of continuing right. Furthermore, when the situation is viewed realistically, one could hardly vouch for the likelihood that the occupancy will be resumed even in the event of an ultimate merits victory for the tenant. Surely where, as here, a jury has found substantial housing violations and the landlord avowedly will remove the leased property from the housing market, "[a]ppellate review of the order" requiring rent deposits "would be an empty rite after" eviction "and the restoration of" possession is "only theoretically possible." Swift & Co. Packers v. Compania Colombiana Del Caribe, 339 U.S. 684, 689, 70 S. Ct. 861, 865, 94 L.Ed. 1206 (1950).

8. Rule 1, Rules Governing Review of Cases from the District of Columbia Court of Appeals (1968). See also Fields v. District of Columbia, 131 U.S.App.D.C. 346, 404 F.2d 1323 (1968).

9. Bell v. Tsintolas Realty Co., *supra* note 7.

10. As in Bell v. Tsintolas Realty Co., *supra* note 7, 139 U.S.App.D.C. at 108 n. 14, 430 F.2d at 481 n. 14 we bear in mind the tremendous volume of cases in the Court of General Sessions brought by landlords seeking repossession of leased properties.

tion coupled with protective orders often emerge from judicial efforts to balance the competing interests of landlord and tenant until the appeal is resolved. The time has come, we believe, for defining the true role of the protective order in the appellate process.

We discern, too, special reasons for allowing an appeal in the case at bar. The jury's verdict in respondent's first suit establishes the fact of substantial housing violations, but the protective order requires the tenant to make monthly deposits. An important inquiry, and one that has consequences for other litigation, is the extent to which the landlord's entitlement to that sort of protection may be embarrassed by existent judicial precedents.[11]

Moreover, the guidelines erected in *Bell*, and the considerations inducing them, may question all the more a protective order in favor of a defaulting landlord which demands deposits equal to full rent.[12] The issue, simply put, is whether an order recognizing an obligation to deposit what is tantamount to standard rent for substandard housing pending appeal is consistent with *Bell*. That issue assumes added importance from the apparently rising incidence of possessory actions based on notices to quit following closely on the heels of possessory actions based on nonpayment of rent.[13]

■ By our estimate, then, the appeal petitioner seeks would present important questions of judicial administration in the area of landlord-tenant litigation.

We grant the appeal to the end that this court may lay those questions to rest.

## IV

■ We now reach petitioner's motion for a stay of eviction pending this court's consideration and decision of the appeal centering on the protective order. Testing the motion by the accepted criteria,[14] we are of opinion that such a stay should be afforded. From what we have already said,[15] and without intimating any view on the merits of the appeal, the probabilities of its success cannot be hastily discounted. The balance of hardship clearly favors petitioner; on the one hand, she would be evicted while, on the other, the landlord declares that the leased apartment will be retired from the housing market.[16] The public interest would hardly be served by adding petitioner and her family to the homeless. Nor can we lose sight of the fact that petitioner has another appeal before the District of Columbia Court of Appeals. That court, as well as the Court of General Sessions before it, felt that a stay of eviction pending that appeal was in order, and we deem it equally appropriate to provide a stay for the duration of the current proceeding in this court.

■ We remain mindful, however, that the stay now outstanding was conditioned upon petitioner's compliance with the protective order, thus suggesting the problem as to whether our stay should incorporate a similar feature.[17] This poses the unique question whether we should make our own protective order

11. Compare Bell v. Tsintolas Realty Co., *supra* note 7; Javins v. First Nat'l Realty Corp., *supra* note 2; Brown v. Southall Realty Co., *supra* note 2.

12. See Bell v. Tsintolas Realty Co., *supra* note 7, 139 U.S.App.D.C. at 109, 430 F.2d at 482–485.

13. Within a relatively short space of time, we have seen this combination of possessory actions not only in the case at bar, but also in a companion case, Blanks v. Fowler, 141 U.S.App.D.C. ——, 437 F.2d 677 (1970), and in Diamond Housing

Corp. v. Robinson, 257 A.2d 492 (D.C. App.1969).

14. See *e. g.*, Virginia Petroleum Jobbers Ass'n. v. FPC, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958).

15. See text *supra* at notes 9–13.

16. See note 3, *supra*.

17. This is not precisely the question whether a stay should be awarded since any stay could be made conditional as well as unconditional.

pending an appeal which is testing another protective order. This, in turn, necessitates initially a close look at our *Bell* decision, our only full-fledged exposition on landlords' protective orders, for such assistance as it may afford.

### V

Already in *Bell* we noted a "primary distinction to be made," in regard to protective orders, "between the preliminary and appellate stages of the litigation."[18] As to the treatment appropriate at the appellate level, we had occasion in *Bell* to say but relatively little; that was because our problem there related to orders formulated at the pretrial stage of the case rather than when appellate review is either pending or sought. We did point out, however, that "[c]ertainly if the landlord has been accorded a summary judgment, * * * or other judgment on the merits, the case for requiring prepayment of rent is strengthened."[19] We added that "similarly, if the tenant prevails at the trial level, any prepayment order will be discontinued."[20] These standards do not accommodate the situation at hand since the tenant prevailed on the issue of housing code violations and the landlord on the issue of repossession via notice to quit.

Indubitably, the historical era of the litigation—pretrial or pending appeal—during which a protective order is to operate can make for a difference in the bundle of factors calling for recognition. In *Bell*, viewing the matter pretrial, we

admonished that protective orders prior to judgment are disfavored, and are to be indulged only where the landlord affirmatively demonstrates a clear need.[21] Prominent in the logic underlying that proscription was the extraordinary character of prejudgment security deposits in American jurisprudence and their chilling effect upon efforts of the poor to seek justice in the courts.[22] Postjudgment security requirements, such as the familiar supersedeas bond,[23] are by no means unusual, however, and now, at the stage at which this case reaches us, the judgments respectively favoring the landlord and the tenant have entered the picture for the first time.[24] And to the extent that it is incumbent upon the landlord, at that stage, to show need for a protective order—a matter we do not now decide—we think that here it sufficiently appears.[25]

We think, too, that no less than the duty of the Court of General Sessions to "fashion an equitable remedy"[26] is our obligation to do equity "to avoid placing one party at a severe disadvantage during the period of litigation."[27] And, as in the situation where a pretrial protective order is under consideration, "we foresee that, normally, the burden of * * * a prepayment order on the tenant will be neither heavy nor unexpected: to require that the tenant meet current rental payments during the litigation period is to require only that he fulfill an obligation which he voluntarily assumed at an earlier date when he entered into the lease."[28] These are

18. Bell v. Tsintolas Realty Co., *supra* note 7, 139 U.S.App.D.C. at 110, 430 F.2d at 483.

19. *Id.*

20. *Id.* at 483.

21. *Id.* at 483–484.

22. *Id.* at 479–481.

23. See, *e. g.*, Fed.R.App.P. 8(b).

24. See Bell v. Tsintolas Realty Co., *supra* note 7, 139 U.S.App.D.C. at 110, 430 F.2d at 483.

25. A motion filed by respondent, see note 39, *infra*, informs us that the landlord is a widow 79 years old with two incompetent adult sons, and is dependent upon the income from the apartment building.

The motion further states that the landlord faces a mounting deficit—more than $3,500 at the time of trial—from operation of the building. In passing, however, we note, but leave for the merits panel, a possible conflict with the landlord's statement of intention to withdraw petitioner's apartment from the rental market. See note 3, *supra*.

26. Bell v. Tsintolas Realty Co., *supra* note 7, 139 U.S.App.D.C. at 109, 430 F.2d at 482.

27. *Id.*

28. *Id.* at 482. *See also* Javins v. First Nat'l Realty Corp., *supra* note 2, 139 U.S.App.D.C. at 381 n. 67, 428 F.2d at 1083 n. 67.

among the considerations that militate against any claim that *Bell* automatically forecloses any and all types of protective orders for landlords pending tenants' appeals from dispossession judgments.

Furthermore, we do not think that the jury's finding that there existed substantial housing code violations at the commencement of the lease precludes imposition of a protective order in this case. In Brown v. Southall Realty Company,[29] the court found that the tenant was not liable for rental payments because the lease was illegal and void from its inception. Nevertheless if a tenant has remained in possession, as in the present case, we think the *Javins* criteria apply, at last pending an appeal of an order to quit the premises: "what portion, if any or all, of the tenant's obligation to pay rent was suspended by the landlord's breach."[30] Although the jury found that the landlord's action for dispossession on the ground of nonpayment of rent must fail, it still granted dispossession on the landlord's action based on notice to quit. In these circumstances, it would have been helpful if the jury had determined further whether the tenant's total or only partial rental obligation was suspended because of the housing code violations.[31]

We do not now decide inflexibly for the future just when and precisely under what conditions protective orders pending appeal are proper. The issues developing in that connection undoubtedly will loom large in the decision of the appeal on the merits, an area into which

we, as a motions, panel, do not unnecessarily intrude.[32] Rather, we confine our treatment to the propriety of some provisional arrangement for this case until the merits panel can formulate the standards to govern protective orders for landlords while their tenants are pursuing appeals. And in so limiting ourselves, we remain sensitive to an obligation in the interim to abide our past precedents validating such orders in appropriate circumstances.[33]

## VI

We conclude that a protective provision should accompany our stay of eviction in this case. Both courts previously dealing with a comparable problem in this case have seen fit to provide interim protection, and we are persuaded to do the same.

The protective order fashioned by the Court of General Sessions and approved by the District of Columbia Court of Appeals requires deposits equivalent to rent in the full amount called for by the lease, and this feature gives us concern. It ignores petitioner's verdict in the first suit establishing substantial violations of the Housing Regulations, and tends to undercut our decision in *Javins*.[34] Moreover, in *Bell*, we pointed out that the amount to be paid to the landlord from funds escrowed pursuant to prejudgment protective orders depends on the strength of the tenant's showing of housing code violations.[35] We believe that a similar consideration should prevail in the calculation of the amount required by such an order pend-

29. *Supra* note 2.

30. Javins v. First Nat'l Realty Corp., *supra* note 2, 139 U.S.App.D.C. at 380–381, 428 F.2d at 1082–1083.

31. See *id.* at 1082–1083.

32. Only if we were persuaded to act favorably upon petitioner's prayer for summary reversal, couched in the motion for stay, could we, as a motions panel, touch the merits of the appeal. But "[a] party seeking summary reversal by motion has the heavy burden of demonstrating both that his remedy is proper and that the merits of his claim so clearly warrant relief as to justify expedited ac-

tion." United States v. Allen, 133 U.S. App.D.C. 84, 85, 408 F.2d 1287, 1288 (1969). We do not think that the answers to these troublesome issues are so plain as to enable a summary decision.

33. *E. g.*, Edwards v. Habib, 125 U.S.App. D.C. 49, 366 F.2d 628 (1965).

34 Javins v. First Nat'l Realty Corp., *supra* note 2.

35. Bell v. Tsintolas Realty Co., *supra* note 7, 139 U.S.App.D.C. at 112, 430 F.2d at 485. See also Javins v. First Nat'l Realty Corp., *supra* note 2, 139 U.S.App.D.C. at 381 n. 67, 428 F.2d at 1083 n. 67.

ing an appeal. The reasonable occupancy value of the premises in "as-is" condition, we think, furnishes the most suitable standard.[36]

It may be that placing a monetary value upon an apartment in subpar condition will always be a difficult task.[37] Certainly it is here, where the sparse record before us is barren of any information helpful to such a determination. We would, in any event, be disposed to afford the parties an opportunity to submit their views, with supporting data, in that regard. We invite the parties to do so, by supplemental memoranda within ten days from date of the order accompanying this opinion.

## VII

■ We accordingly grant the petition for allowance of an appeal from the order of the District of Columbia Court of Appeals denying a stay of the protective order entered by the Court of General Sessions. The review in this court thus made possible will, of course, be limited strictly to that order. We also extend our previously-granted temporary stay of eviction into a stay pending this court's decision on the appeal so allowed. That stay, as we have explained, will be conditioned upon monthly payments into the registry of the Court of General Sessions in an amount to be determined by us. The parties may submit supplemental memoranda, within ten days, on the question as to what that amount shall be. The payments so required will be for the period commencing with the date of the Court of General Sessions' protective order and continuing until disposition of the appeal we now allow.[38] The first such payment will become due 15 days after our order fixing the monthly amount, and will include the aggregate then accrued to the end of the 15-day period.[39]

So ordered.

---

36. See Bell v. Tsintolas Realty Co., *supra* note 7, 139 U.S.App.D.C. at 111–112, 430 F.2d at 484–485. *Cf.* Thompson v. Mazo, 137 U.S.App.D.C. 221, 226, 421 F.2d 1156, 1161 (1970).

37. We note that the Court of General Sessions summarily dismissed petitioner's breach of warranty counterclaim, see Javins v. First Nat'l Realty Corp., *supra* note 2, ostensibly on the ground that it did not want the jury to speculate on the apartment's value.

38. The merits panel will have ultimate control over the disposition of the payments made under the protective order.

39. While the petition for appeal and the motion for stay were under consideration, respondent presented a motion to require petitioner to pay rent to the landlord or, alternatively, to require from petitioner a supersedeas bond pending decision on the petition. This opinion, then in preparation, delineates the nature and scope of the protection we believe the landlord is entitled to pending final decision on petitioner's appeal. Our protective order, as stated, will be made retroactive to the date of the protective order entered by the Court of General Sessions.

To the extent that respondent's motion sought direct payment to the landlord, as distinguished from deposits into the court's registry, it conflicted with our holding in Dorfmann v. Boozer, 134 U.S. App.D.C. 272, 414 F.2d 1168 (1969). In that case, the District Court had granted a preliminary injunction directing the deposit of rents into the court, with a view to potential disbursement pendente lite to the landlord. We summarily reversed, holding that

The great equitable power to enjoin a party pendente lite should not be exercised unless it is manifest that the normal legal avenues are inadequate, that there is. a compelling need to give the plaintiff the relief he seeks, and that the injunction will not wreak greater harm on the party enjoined.

*Id.* at 277–278, 414 F.2d at 1173–1174. Compare Bell v. Tsintolas Realty Co.. *supra* note 7, 139 U.S.App.D.C. at 112, 430 F.2d at 485.

The landlord's protective order, like the injunction, is "an equitable remedy," *id.* at 482, and is similarly circumscribed. No greater justification appeared here than in *Dorfmann* for a monetary turnover pendente lite. The landlord's showing of need did not suffice; the landlord in *Dorfmann* demonstrated a $23,000 average total monthly operating deficit and a default on a large mortgage. And, with an apparently financially insecure landlord, no more here than in *Dorfmann* could we shift the risk to the tenant prior to decision on the merits of the appeal—a decision which might absolve the tenant of any compensatory responsibility.