MAX R. KARGMAN & another *vs.* MARJORIE E. DUSTIN
& others.

Suffolk.    March 11, 1976. — February 11, 1977.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Landlord and Tenant,* Eviction, Rent.  *Summary Process.  Practice,
    Civil,* Appeal, Trial by jury.  *Constitutional Law,* Trial by jury.
    *Due Process of Law,* Appeal.

Where a tenant failed to satisfy the conditions of appeal imposed in
    lieu of bond in a summary process proceeding that he pay base rent
    to the landlord and sums representing a disputed increase to the
    court on a monthly basis and where his failure to pay base rents
    on time was not due to financial hardship, dismissal of the tenant's
    appeal was warranted.  [107-108]
An order that a tenant pay rent during the pendency of an appeal
    from an adverse decision in a summary process proceeding is a
    reasonable limitation on the right to a jury trial where the tenant
    remains in possession of the premises, and the refusal of a Superior
    Court judge to consider hardship on the question of payment of
    the base rent accruing during appeal, in the absence of a petition
    under G. L. c. 239, § 5, was not error.  [108-111]
A requirement that a tenant pay rent during the pendency of an ap-
    peal from an adverse decision in a summary process proceeding is
    not unconstitutional.  [111-113]
Where a tenant paid base rent to her landlord as a condition of main-
    taining her appeal from an adverse decision in a summary process
    proceeding but failed to pay a disputed increase and petitioned the
    court under G. L. c. 239, § 5, to waive the requirement that she pay
    the increase on account of financial hardship, the judge erred in
    ruling, as matter of law, that hardship was irrelevant and dismissing
    her appeal.  [113-114]

SUMMARY PROCESS APPEALS entered in the Superior
Court on May 6, 1974, and June 3, 1974.

The cases were heard by *Ford,* J., on motions to dismiss.

*Robert J. Doyle* for Marjorie E. Dustin & others.

*Ann-Louise Levine* for Max R. Kargman & another.

KEVILLE, J.    The appellants are thirty-five tenants of
Battles Farm Company, a limited partnership whose gen-

Kargman *v.* Dustin.

eral partners are the appellees, Max R. Kargman and
William Kargman (Kargmans). Battles Farm Company
owns and operates Battles Farm Village (Battles Farm),
a section 236[1] multifamily housing development in Brock-
ton. Three of the appellants, David Adelman (Adelman),
J. Michael McDermott (McDermott) and Marjorie E.
Dustin (Dustin), have been selected by the parties with
the approval of this court to represent collectively all of
the appellants.[2]

A recitation of the procedural vagaries of these cases
appears to be unavoidable. The Kargmans received ap-
proval to raise the rents at Battles Farm from the United
States Department of Housing and Urban Development
(HUD).[3] The tenants were notified that the increase
would take effect on May 1, 1973. The tenants refused to

---

[1] Under this section of the Housing and Urban Development Act of
1968, 82 Stat. 498, 12 U.S.C. § 1715z-1 (1970), the owner constructs
housing for low and moderate income families with loans from private
lenders at prevailing interest rates or from State agencies such as the
Massachusetts Housing Finance Agency at somewhat lower than the
prevailing rate. The owner is permitted by the United States Depart-
ment of Housing and Urban Development (HUD) to collect rent suffi-
cient to cover operating costs and provide a six percent profit, but the
cost of the loan is computed as if it were being paid at one percent
interest thus guaranteeing lower rents than if the landlord had to cover
the full cost of the loan through rental collections. HUD makes up
the difference between one percent and the interest rate charged by
the private lender or the State agency through direct payments to the
mortgagee. One of the real incentives for participation, however, is in
the use of a section 236 project as a tax shelter. A limited partnership
may pass through its depreciation losses to partners, who then use the
paper losses to offset other real income. See Note, Procedural Due
Process in Government-Subsidized Housing, 86 Harv. L. Rev. 880, 882-
887 (1973).

[2] Adelman and McDermott are representative of nine appeals under
number 75-800. Dustin is representative of appeals numbered 75-817
to 75-840, inclusive. The remaining cases, numbered 75-856 and 75-857,
were entered as appeals from denials by a single justice of this court
of their motions to vacate a Superior Court order dismissing their ap-
peals for failure to comply with a stipulation that they pay the "base"
rent when due as a condition of appeal to this court. No argument
having been addressed to the denials of the motions, the appeals from
those denials are deemed to have been waived.

[3] In section 236 housing programs, HUD must approve any rent in-
creases. 12 U.S.C. § 1715z-1(f) (1970).

pay the increase and in July, 1973, brought an action in the United States District Court for the District of Massachusetts challenging the increase.[4] That case is still pending.

Following the institution of that action, the Kargmans brought summary process proceedings against more than one hundred of the Battles Farm tenants in the District Court of Brockton for failure to pay the rent increase (increase). The District Court judge refused to stay the eviction proceedings pending the outcome of the Federal litigation. The tenants applied for a stay in the Supreme Judicial Court. A single justice of that court transferred the petition to this court pursuant to G. L. c. 211, § 4A.

A single justice of this court ordered a stay in the eviction proceedings on the conditions that the tenants pay their base rent (rents paid by the tenants prior to the increase) to the Kargmans and that they pay the disputed increase into the District Court of Brockton or to an escrow account on the first of each month thereafter. The single justice elected to retain jurisdiction over the case in order that the parties might apply for modification or clarification of his orders.

Following certification by the Brockton board of health of violations of the State Sanitary Code at Battles Farm, certain of the tenants began to withhold their base rent pursuant to G. L. c. 239, § 8A, as amended through St. 1973, c. 1007, § 3.[5] Some of the tenants also complained to

---

[4] Brodsky, et al. vs. Battles Farm Company et al., Civil No. 73-2251F.

[5] General Laws c. 239, § 8A, provides in pertinent part that "[t]here shall be no recovery under this chapter, pursuant to a notice to quit for nonpayment of rent ... if such premises are in violation of the standards of fitness for human habitation established under the state sanitary code ... and if such violation may endanger or materially impair the health or safety of persons occupying the premises; provided, however (1) that the person occupying the premises, while not in arrears in his rent, gave notice in writing to the person to whom he customarily paid his rent (a) that he would, because of such violation, withhold all rent thereafter becoming due until the conditions constituting such violations were remedied and (b) that a report of an inspection of such premises has been issued by the board of health ... that such violation exists and that it may endanger or materially

the single justice that the requirement that they pay the increase into the District Court of Brockton or to an escrow account had created serious financial hardship for them. On February 8, 1974, the single justice issued a supplementary order in which he referred the sanitary code violation to the District Court of Brockton "for such action ... as may be appropriate to determine promptly the merits of the ... [tenants'] defense under G. L. c. 239, § 8A." With respect to the hardship complaint, the supplementary order stated: "Upon a determination by the Brockton District Court that such payments would create a hardship to any ... [tenant], it may reduce the amount of such payments or provide that no payments be required as a condition of the stay." The order did not alter the tenants' obligation to continue paying the base rent to the Kargmans.

These matters went to trial in the District Court of Brockton in the spring of 1974. The District Court judge decided that the tenants' rent withholding, pursuant to c. 239, § 8A (n. 5), was without merit and he ordered that they pay the Kargmans all of the base rent which they had withheld. He also ordered them to begin to pay the increase into the District Court on a monthly basis. However, he suspended payment of the increase which certain of the tenants had failed to make between May 1, 1973, and May 1, 1974.

The tenants appealed from this decision to the Superior Court. They also moved for leave to waive bond pursuant to G. L. c. 239, § 5, as amended through St. 1971, c. 347, § 1.[6] The District Court judge allowed these motions but

impair the health or safety of persons occupying said premises." The statute's purpose is to provide tenants with a means of enforcing the State code without having to initiate court proceedings. *Boston Housing Authy.* v. *Hemingway,* 363 Mass. 184, 193-194 (1973).

[6] General Laws c. 239, § 5, as so amended provided that "[i]f the defendant appeals from a judgment of a district court rendered for the plaintiff for the possession of the land or tenements demanded, he shall, except as provided in section six, before such appeal is allowed, give bond in such sum as the court orders, payable to the plaintiff, with sufficient surety or sureties approved by the plaintiff or court, or

ordered that, in lieu of bond, the tenants, as security, pay the base rent to the landlord and sums representing the increase into the District Court of Brockton on a monthly basis. Thus, the judge in effect reimposed the original order of the single justice of this court. However, as stated above, the latter later modified his order to allow the District Court judge to reduce or eliminate payment of the increase in those cases in which he should find the presence of financial hardship. The District Court order waiving bond included no such provision. But, shortly after the appeals had been filed in the Superior Court, several of the tenants moved in the District Court of Brockton to have the judge modify the increase because of hardship. The judge declined to pass upon that issue ruling that it could then be more appropriately dealt with in the Superior Court.

In the course of the Superior Court proceedings, the differences among the cases represented by Adelman, McDermott and Dustin emerged. In September, 1974, the Kargmans moved to dismiss the appeals of Adelman and McDermott for failure to adhere to the security conditions. The matter was referred to a master who found that Adelman had been at least three weeks late in the payment of his rent in each month from June, 1974, to November, 1974, inclusive, and that McDermott had made no payment in June, 1974, and had been between ten and twenty-four days late in July, August, September and

secured by cash or its equivalent deposited with the clerk, in a reasonable amount to be fixed by the plaintiff or court, conditioned ... to pay to the plaintiff, if final judgment is in his favor, all rent accrued at the date of the bond, all intervening rent, and all damage and loss which he may sustain by the withholding of possession of the land or tenements demanded and by any injury done thereto during such withholding, with all costs, until delivery of possession thereof to him. . . .

"The court shall waive the requirement of such bond or security if it is satisfied that the defendant has a defense which is not frivolous and that he has insufficient funds available to him to furnish the necessary bond or security. The court may require any person for whom such bond or security has been waived to pay in installments as the same becomes due, pending appeal, all or any portion of any rent which shall become due after the date of such waiver, for the continued occupancy of the premises."

Kargman *v.* Dustin.

October. In Adelman's case, the master found that the delay in payment of the base rent and his failure to pay the increase was due to financial hardship caused by the illness of his wife and his unemployment. He found, however, that McDermott was able to pay both the base rent and the increase. On May 22, 1975, the Superior Court judge confirmed the master's report and judgment was thereafter entered dismissing the appeals. From that judgment Adelman and McDermott seasonably appealed to this court. In their cases the Superior Court judge did not reach the issue of the unpaid increase. Instead, he ruled that because these tenants would be subject to eviction in new proceedings for failure to pay the base rent, regardless of hardship, failure to make timely base rent payments was a sufficient reason for dismissal of their appeals.

Turning to Dustin's case, while her appeal was pending, she paid the base rent to the landlord regularly but failed to pay the increase into the District Court. The Kargmans moved for dismissal of her appeal for failure to pay the increase. In response, Dustin moved for leave to waive or reduce the rent increase requirement on the basis of hardship. The Superior Court judge who had passed upon the cases of Adelman and McDermott dismissed Dustin's appeal. While he found that hardship had in fact been the cause of her failure to pay the increase, he ruled, as matter of law, that hardship did not excuse failure to comply with the conditions of appeal. Dustin has seasonably appealed to this court from that judgment.

Resolution of the issues presented on these appeals calls for an attempt to balance the rights and obligations between two socio-economic groups, landlords and tenants.[7] On the one hand, tenants are entitled to their day in court before they can be evicted since courts were not intended to function simply as rubber stamps for landlords seeking to remove their tenants. *Pernell* v. *Southall Realty*, 416

---

[7] Approximately 40% of the country's population lives in rental dwellings. The percentage is even higher in urban areas and is increasing yearly. Comment, Tenant's Rights in Pennsylvania: Has the Middle Class Tenant been Forgotten? 12 Duquesne L. Rev. 48 (1973).

Kargman *v.* Dustin.

U. S. 363, 385 (1974). On the other hand, landlords are entitled to reasonable assurance that rent due will continue to be paid while protracted eviction proceedings for nonpayment of rent are pending. *Bell* v. *Tsintolas Realty Co.* 430 F. 2d 474, 481-482 (D.C. Cir. 1970).

The specific question for decision here is whether the Battles Farm tenants should be permitted to have their cases tried to a jury in the Superior Court on appeal from the judgment of the District Court despite the fact that they failed to satisfy the conditions of appeal imposed in lieu of bond by the District Court judge. Because of the differences in their economic condition and in their response to the District Court order, their appeals merit individual discussion. As stated above McDermott was late in his payments of base rent; and he failed to pay the increase into the District Court although, according to the master's findings, his was not a hardship case. Adelman was late in paying his base rent and delinquent with respect to the increase; but the master found his to be a hardship case. Dustin paid the basic rent but failed to pay the increase, a failure which the Superior Court judge found to be due to hardship.

1. The issue in McDermott's appeal is uncomplicated. He does not seriously challenge the master's finding that his failure to pay the base rent on time was not based upon financial hardship. The thrust of his argument appears to be that his chronic tardiness caused no prejudice to the Kargmans because it was customary for tenants at Battles Farm to be tardy in the payment of their rent and because the payment, when eventually made, did in fact secure the landlord against financial loss should he prevail on appeal. That argument is to be rejected out of hand.

Courts should not be obliged to play the part of rent collection agencies (see *Cooks* v. *Fowler,* 459 F. 2d 1269, 1277 [D.C. Cir. 1971]), and landlords who are dependent upon monthly rent payments to cover operating expenses should not be obliged to engage in constant speculation as to the point within each month rents are to be received from their tenants.

In the usual case, where rent payments are not being made on time, the landlord's remedy is to terminate the tenancy (G. L. c. 186, §§ 11, 12) and seek summary process for eviction under G. L. c. 239, § 1, pursuant to a notice to quit. In that event, a tenant in possession under a lease may avoid eviction by tendering the rent within four days of the return day of the writ. Thus, it is obvious that a consistently dilatory tenant could force a landlord into a monthly ritual of notice and writ and still remain in possession of the premises by paying the rent within four days of the return day. Compare *Gentile* v. *Rent Control Bd. of Somerville,* 365 Mass. 343, 347 (1974). Were McDermott's contention to prevail, a tenant could adopt a similar modus operandi and retain his advantage at the appeal stage; for as long as the tenant paid the rent prior to the time of hearing on the landlord's motion to dismiss the appeal, the motion would be denied and the delinquency permitted to continue. The imposition of such a repetitive burden upon the landlord would be patently unreasonable particularly where the tenant has been relieved of the obligation of furnishing bond as a condition of appeal.

2. A more difficult issue is present in Adelman's case, namely, whether a tenant unable to pay his base rent on time due to financial hardship may appeal from an adverse decision of a District Court in a summary process proceeding and have a jury trial in the Superior Court. As a starting point, it is to be recognized that Massachusetts has long accorded tenants both a constitutional and a statutory right to a jury trial in eviction cases. *Davis* v. *Alden,* 2 Gray 309, 312 (1854).[8] The question is whether the rent requirement in Adelman's case violated his constitutional right to a jury trial. "It is familiar law that the right of

---

[8] The United States Supreme Court has held that the Seventh Amendment to the Federal Constitution guarantees the right to a trial by jury in an action brought in the District of Columbia for the recovery of possession of premises. *Pernell* v. *Southall Realty,* 416 U. S. 363 (1974). *Pernell* does not govern here because the Seventh Amendment has not yet been held applicable to the States. *Curtis* v. *Loether,* 415 U. S. 189, 192, n.6 (1974).

trial by jury secured by art. 15 of the Declaration of Rights is sacred and must be sedulously guarded against every encroachment, yet it may be regulated as to the mode in which the right shall be exercised so long as such regulation does not impair the substance of the right." *H. K. Webster Co.* v. *Mann,* 269 Mass. 381, 385 (1929). *Fratantonio* v. *Atlantic Refining Co.* 297 Mass. 21, 24 (1937).

In *Webster,* in treating of the statutory conditions for the removal of an action from a District Court to claim a jury trial in the Superior Court, including the posting of a bond with sureties, the Supreme Judicial Court has stated: "It is too plain for discussion that the regulation of the right to trial by jury by the statutes here involved is within the constitutional power of the General Court. No essential of the right to trial by jury is impaired in any degree. These statutes merely impose reasonable limitations for the exercise of such right." *Webster, supra,* at 385.

The long standing right to a jury trial in eviction cases has been accompanied by a series of bond requirements regulating that right. The antecedents of G. L. c. 239, § 5 (n.6), commenced with St. 1783, c. 42, § 2, which provided that a defendant in an action for trespass could raise the defense of title only if he posted a bond with sufficient sureties. Statute 1825, c. 89, § 2, required that a tenant wishing to appeal from an adverse decision in an eviction case must "recognize with sufficient surety or sureties, in such reasonable sum as the court shall order, to pay all rent due and in arrears, and all intervening rent, damages and costs."

The requirement that rent becoming due pending reso-lution of an appeal be paid in lieu of bond as a condition of appeal remained in effect with minor changes for more than a hundred years.[9] In 1969, G. L. c. 239, § 5 (n.6), was amended to permit the waiver of the bond requirement in

---

[9] See Rev. Sts. (1836) c. 104, § 10; St. 1848, c. 142, § 1; Gen. Sts. (1860) c. 137, § 9; St. 1871, c. 315, § 2; St. 1874, c. 271, § 8; Pub. Sts. (1882) c. 175, § 6; St. 1888, c. 325, § 1; R. L. (1902) c. 181, § 6; St. 1946, c. 175, § 1.

Kargman *v.* Dustin.

the case of a tenant with insufficient funds. St. 1969, c. 366. Two years later, however, the Legislature added the present final sentence to § 5 which permits a judge, who has waived security, to require a tenant to pay *"all or any portion* of any rent which shall become due" (emphasis supplied) as a condition of remaining in possession of the premises pending appeal. That addition would indicate that the Legislature, after providing for the waiver of bond in hardship cases, decided to redress an imbalance in summary process appeals to permit a judge, in the exercise of his sound discretion, to order payment of an appropriate portion of the rent as security.

An order that a tenant pay rent during the pendency of the appeal is a reasonable limitation on the right to a jury trial where the tenant remains in possession of the premises. See *Bell* v. *Tsintolas Realty Co.* 430 F. 2d at 481-482.[10] Such a security order is by no means unfair to the tenant since he is being required to do no more than fulfill a contractual obligation which he voluntarily assumed at the outset of his tenancy (*Bell, supra,* at 482; *Cooks* v. *Fowler,* 437 F. 2d 669, 674 [D.C. Cir. 1971]); and since, in most cases, it is incumbent upon him to tender the full rent each month to continue legally in possession of the premises.[11] To reach a different conclusion would be to accord tenants squatters' rights pending the resolution of their appeals.[12]

---

[10] *Bell* specifically sanctioned protective orders in those situations in which a tenant has asked for a jury trial .

[11] There may be situations in which a tenant should not be liable for the full rent pending a jury trial. Where, for example, summary process is based upon a notice to quit, but in a prior action, based on nonpayment of rent, the tenant prevailed because of valid rent withholdings under G. L. c. 239, § 8A (n.5), the judge could properly set the rent figure at a lower level to compensate for the substandard condition of the premises. See *Bell* v. *Tsintolas Realty Co. supra,* at 484; *Blanks* v. *Fowler,* 437 F. 2d 677, 679-680 (D.C. Cir. 1970); *Cooks* v. *Fowler,* 459 F. 2d at 1274-1275.

[12] These considerations are not altered by the fact that Battles Farm is a federally subsidized housing project. Under a section 236 program the government provides assistance to landlords in the form of interest subsidies but with respect to the tenants' obligation to pay base rent, the Kargmans, as a private landlord, and their Battles Farm tenants

Kargman *v.* Dustin.

General Laws c. 239, § 5, does in fact permit a tenant suffering severe economic hardship to seek a waiver of both the standard appeal bond and a portion of his base rent in lieu of bond. Adelman at any time could have brought a petition for such relief in the Superior Court; but neither he nor any other tenant sought to modify the requirement that they pay the base rent in lieu of posting a bond. Granted that the requirement to pay the base rent is a valid limitation on the right to a jury trial, the refusal of the Superior Court judge to consider hardship on the question of payment of the base rent accruing during appeal, in the absence of a petition to do so, was not error.

For reasons discussed in McDermott's case, we find no substance in Adelman's contention that, because his payments were merely late for several consecutive months, his appeal should not have been dismissed. Equally unavailing is his argument that the right of access to the courts is fundamental and may only be limited by monetary requirements where a compelling State interest is involved. His argument is based upon the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. While the United States Supreme Court has waived certain costs of appeal for indigent criminal defendants (*Griffin* v. *Illinois,* 351 U. S. 12, 17 [1956] [free transcript required on due process and equal protection grounds]) (*Douglas* v. *California,* 372 U. S. 353, 357-358 [1963] [appointed counsel required by the Fourteenth Amendment]),[13] it has recognized the right of indigents to have filing fees waived in civil cases

---

have "an ordinary lease arrangement." See *Hahn* v. *Gottlieb,* 430 F. 2d 1243, 1247 (1st Cir. 1970). Contrast *McQueen* v. *Druker,* 438 F. 2d 781, 785-786 (1st Cir. 1971). See also G. L. c. 121B, § 32, which requires a local public housing authority to grant a tenant a hearing before terminating his lease, except where the ground for termination is nonpayment of rent; *Vardenski* v. *Hills,* Civil No. 76-2222-C, slip opinion at p. 6 (D. Mass., filed December 27, 1976).

[13] The majority opinion in *Douglas* did not specify whether reliance was being placed upon due process, equal protection or both. The dissent by Mr. Justice Harlan contended that the court appeared to rely on both, "with obvious emphasis on 'equal protection.' " *Id.* at 360-361.

only in rare instances. *Boddie* v. *Connecticut,* 401 U. S. 371, 382 (1971) (filing fee in libel for divorce waived on due process grounds). With respect to due process, the Supreme Court has held that a requirement that a tenant pay rent pending judicial determination of an eviction case is not unconstitutional. *Lindsey* v. *Normet,* 405 U. S. 56, 66-67 (1972) (upholding a provision requiring an eviction trial within six days unless the tenant were to post security for accruing rent).[14] And the Court has refused to waive filing fees on either due process or equal protection grounds where matters of "economics or social welfare" are at issue as long as a rational State purpose exists. *United States* v. *Kras,* 409 U. S. 434, 446 (1973) (filing fee for bankruptcy). *Ortwein* v. *Schwab,* 410 U. S. 656, 660 (1973) (filing fee for welfare appeal). In these cases the Court has held that producing revenue to cover operating costs of the courts is a rational State purpose. *Kras, supra,* at 447-448. *Ortwein, supra.* The principle that a State may impose conditional access to its courts in matters of economics and social welfare is even more emphatic at the appeal stage than at the initial trial level. See *Ohio* v. *Akron Metropolitan Park Dist.* 281 U. S. 74, 80 (1930); *Lindsey* v. *Normet,* 405 U. S. at 77; *Ortwein, supra.*

Since the subject matter of the present litigation falls within the economics and social welfare paradigm of *Kras* and *Ortwein, supra,* rather than within a fundamental interest mold (see *Lindsey, supra,* at 73-74), a requirement that rent be paid as a condition of a tenant's appeal from an adverse decision in the District Court is to be upheld for equal protection purposes if it has any rational justification. *Kras, supra,* at 446. *Ortwein, supra.* Contra, *Harrington* v. *Harrington,* 269 A. 2d 310, 315 (Me. 1970).

---

[14] *Lindsey* also held that the statute in question did not violate the equal protection clause. *Id.* at 69. While that court's observation that the statute applied "to all tenants, rich and poor, commercial and noncommercial" appears to dispose of Adelman's equal protection claim, that equal protection discussion was, for the most part, addressed to the propriety of special rules for landlord-tenant actions rather than to other types of cases.

A dual rational purpose is served by the requirement that rent be paid as a condition of appeal. It serves as a deterrent to frivolous appeals, *Damaskos* v. *Board of Appeal of Boston,* 359 Mass. 55, 64 (1971); *Donnelly* v. *District Court of Newton,* 3 Mass. App. Ct. 746 (1975), and more importantly, it provides landlords with a degree of financial protection during the course of litigation which may well be protracted. See *Bell* v. *Tsintolas Realty Co.* 430 F. 2d at 481-482. An excessive appeal bond may not, of course, be employed to deny a meritorious appeal to a person of modest means. *Damaskos,* 359 Mass. at 64-65 (insufficient showing that $50,000 bond to appeal from a town zoning decision was reasonable). In Adelman's case, where the bond was waived by the District Court judge on the basis of hardship, we conclude that the base rent requirement in lieu of bond is not an unreasonable restriction upon his right of appeal.

3. We think that Dustin's appeal stands on a different footing. It is one thing to require a tenant as a condition of appeal to pay accruing rent which she has already contracted to pay in her lease. It is another to order the tenant, particularly one lacking sufficient funds, to pay the increase, the ultimate legality of which is the subject of pending litigation in another court.[15]

Under G. L. c. 239, § 5 (n.6), the court may require a tenant for whom bond has been waived to pay all or any portion of "rent which shall become due." Whether the disputed increase fits that phrase is open to question. The single justice of this court recognized the odd position of the increase in this statutory framework when he directed that, upon a determination of hardship, the District Court could reduce the increase requirement while the summary

---

[15] In the instant case, a Federal District Court judge denied the Kargmans' motion for summary judgment which is at least some indication that the tenants have raised material questions of fact regarding the propriety of the HUD-authorized increases. Brodsky, et al *vs.* Battles Farm Company, et al., Civil No. 73-2251-F, order of February 26, 1975 (D. Mass.).

Kargman *v*. Dustin.

process actions were pending[16] and again when he stated that the Superior Court had ample power to modify those conditions on appeal which had been imposed by the District Court with respect to the increase.[17]

Hardship which prevents a tenant from paying an increase presently under challenge in another court, as in this case, should not necessarily bar her from seeking a jury trial on appeal from a judgment of a District Court that her withholding of base rent under G. L. c. 239, § 8A (n.5), was without merit. Dustin's appeal presents an issue which particularly calls for judicial effort to balance the competing interests of landlord and tenant pending a resolution of the appeal. See *Cooks* v. *Fowler*, 437 F. 2d at 673. Here, in contrast to the cases of McDermott and Adelman, the Kargmans have not been deprived of rent to which they have current entitlement, since the judge of the District Court of Brockton had ordered that the increase be paid into the court pending resolution of the tenants' Federal action.

The Superior Court judge did not rule on Dustin's motion, filed in July, 1975, to waive the requirement that she pay the increase because of hardship. Rather, while finding that her failure to pay the increase was due to financial hardship, he ruled, as matter of law, that hardship was irrelevant and dismissed her appeal. We hold that ruling to be erroneous. From our reading of the second paragraph of c. 239, § 5 (n.6), we conclude that the question whether Dustin could be excused from paying the increase, or part of it, must be determined not as matter of law but in the exercise of sound judicial discretion. Consequently, her case is to be remanded to the Superior Court for a determination by the judge, after receiving additional evidence if necessary, whether, in his discretion, the requirement that she pay the disputed increase, or a portion of it, into the court, as a condition of her appeal, should now be waived.

---

[16] Supplementary order of the single justice, February 8, 1974.

[17] Order of the single justice, September 24, 1974.

The continuing surveillance of these cases by the single justice of this court is now vacated. The judgments dismissing Adelman's and McDermott's appeals are affirmed. The judgment dismissing Dustin's appeal is reversed and her case remanded to the Superior Court for a further hearing, consistent with this opinion, on the Kargmans' motion to dismiss her appeal and for a hearing on her motion to waive the increase pending a resolution of her appeal from the judgment of the District Court.

*So ordered.*