Ceola COOKS, Appellant,

v.

Roland FOWLER, t/a J. Edward Fowler
and Son, Appellee.

No. 24546.

United States Court of Appeals,
District of Columbia Circuit.

Jan. 12, 1971.

Messrs. Richard B. Wolf, and C. Christopher Brown, Washington, D. C., were on the supplemental memoranda for appellant.

Mr. Herman Miller, Washington, D. C., was on the supplemental memorandum for appellee.

Before FAHY, Senior Circuit Judge, and ROBINSON and ROBB, Circuit Judges, in Chambers.

SUPPLEMENTAL OPINION

PER CURIAM:

On November 13, 1970, we allowed an appeal to review the protective order entered in favor of the landlord herein, and stayed eviction of the tenant-appellant pending resolution of the appeal.[1] We found it appropriate to condition the stay on monthly security deposits by appellant,[2] and we pegged the standard

---

1. Cooks v. Fowler, 141 U.S.App.D.C. 236, 437 F.2d 669 (1970).

2. *Id.* at 240–243, 437 F.2d at 673–676.

for ascertaining the amount thereof at "[t]he reasonable occupancy value of the premises in 'as-is' condition * * *." [3] We invited the parties "to submit their views, with supporting data," as to what that value is.[4] Their counsel have now filed supplemental memoranda.

Appellant's memorandum argues basically that she should not be required to make deposits because, allegedly, (a) her apartment is virtually uninhabitable and legally unrentable, (b) the landlord is leasing the premises without a license and without a certificate of occupancy, and (c) no need for a protective order has been demonstrated. Appellant submits photographs and affidavits indicating that the apartment is in substandard condition. Appellee, on the other hand, contends that all necessary repairs have been made as promptly as possible, and that any attempt to set the level of the monthly deposits below the rent contracted for would be speculative. He proposes, as the governing standard, "the difference between the contract price and the value without the service" [5] and, since apparently no evidence of that kind was introduced at the trial, he urges us not to reduce the amount of the deposits below the amount stipulated in appellant's lease as rent.

Our earlier opinion made clear our decision to require security deposits pending litigation of the appeal, and the standard by which the deposits are to be measured. To the extent that the parties' memoranda attempt to relitigate those questions, they exceed the limits of our invitation. And while appellant has supplied considerable information as to the "as-is" *condition* of her apartment, neither party has furnished any data bearing more directly on its "as-is" occupancy *value*.[6] Without more abundant valuation data than we can glean from the record or notice judicially, it is impossible to fix the "as-is" value of appellant's apartment with the precision we would like.

The supplemental memoranda thus fall short of our expectations, but we do not feel justified in withholding further action to await additional memoranda. Our present task is not to make a final decision as to abatement of rent because of housing code violations,[7] but is rather an interim formulation affording the landlord reasonable protection pending the tenant's appeal. Before us is information as to the physical condition of appellant's apartment, and some indication in the record as to its occupancy value if it met all code specifications. On these data we can base an estimate as to its "as-is" value, though one not wholly satisfactory. We think the interests of the parties will be better served by settling the question promptly, and as best we can on the record as the parties saw fit to leave it.

We start by accepting the rent contracted for—$72.50 per month [8]—as evidence of the occupancy value of the apartment if it fully complied with applicable housing regulations. As a rough division, but one deemed reasonable, we take one-third of that value as

3. *Id.* at 243, 437 F.2d at 676.

4. *Id.* at 243, 437 F.2d at 676.

5. In support, appellee cites Rubinstein v. Lichtenstein, 137 A.2d 219 (D.C.Mun. App.1957). We find, however, that what the court there approved was different: "the difference between the *rental value* of the premises in the condition as contracted for and the *rental value* of the premises in their actual condition * * *." *Id.* at 220. That standard conforms with our own.

6. We realize that a tenant on welfare with three children might not be able to supply information of the latter type. We have difficulty in understanding why appellee, 35 years in the real estate business, could not do so.

7. See Javins v. First Nat'l Realty Corp., 138 U.S.App.D.C. 369, 380–381, 428 F.2d 1071, 1082–1083 (1970).

8. In this connection we note from the record in Blanks v. Fowler, 141 U.S.App. D.C. 244, 437 F.2d 677 (1970), that the monthly rent for each of the 15 apartment units in the building is approximately $72.50.

representing shelter in the narrowest sense, and the remaining two-thirds as reflecting the qualitative improvements and facilities required by the regulations. By that yardstick, the apartment in "as-is" condition seems worth the first third since it does in fact shelter appellant and her children. It is, however, in determining the value of the qualitative two-thirds that the conditions disclosed by appellant's presentation exact their toll. The substantial imbalance between affirmative and negative qualitative factors persuades us to include in the amount of the monthly security deposits only one-half of the qualitative two-thirds.

The formula we apply here is our own. We devised it in an effort to meet fairly and expeditiously the exigencies of this particular case. With more expert assistance than we have received, we might well have fashioned a different formula. We find comfort in the knowledge that any imperfections can be adjusted when the case is finally resolved on the merits.

One-third of the stipulated rent—the assumed occupancy value without housing code violations—is $24.17; the qualitative two-thirds is $48.33. Our protective order will require deposits consisting of $24.17 for shelter and $24.17 for qualitative factors above bare shelter, or $48.34 in the aggregate.[9] The security deposits will, of course, be made in accordance with the procedure outlined in our previous opinion.[10]

So ordered.

Circuit Judge ROBB does not believe the record furnishes a basis for a judgment as to the present value of the appellant's apartment.

---

9. This compares favorably with the $50.-00 per month fixed by the protective order under review in Blanks v. Fowler, *supra* note 8, which amount we found acceptable as the amount to be deposited pursuant to our own protective order pending appeal in that case.

10. Since the parties will obviously be benefited by an early disposition of the appeal, we expedite the briefing schedule and accelerate the date for oral argument.