Ceola COOKS, Appellant,

v.

Roland A. FOWLER, t/a J. Edward Fowler and Son, Appellee.

No. 24546.

United States Court of Appeals, District of Columbia Circuit.

Argued March 11, 1971.

Decided Dec. 2, 1971.

Reynolds Spring Co. v. L. A. Young Industries, 101 F.2d 257, 259 (6th Cir. 1939).

2. White v. Higgins, *supra* note 1.

3. 1256.

Mrs. Caryl S. Cole, Washington, D. C., with whom Messrs. C. Christopher Brown, Baltimore, Md., and Richard B. Wolf, Washington, D. C., were on the brief, for appellant.

Mr. Herman Miller, Washington, D. C., for appellee.

Before FAHY, Senior Circuit Judge, and ROBINSON and ROBB, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

The task at hand is a review of a trial court's protective order awarded a land-

lord pending a tenant's appeal from a judgment of dispossession. It follows our allowance in *Cooks I* [1] of the review and a conditional stay of eviction pending its completion. The events begetting litigation in this court are chronicled in our initial opinion in this case.[2] We commence our present assignment with a brief recapitulation.

Appellee, the landlord's rental agent, brought two suits in the District of Columbia Court of General Sessions, now the Superior Court of the District of Columbia, for possession of an apartment previously leased to appellant. The first suit, charging nonpayment of rent, met a counter charge that conditions transgressing the Housing Regulations [3] had endured in the apartment from the beginning of the lease term.[4] The second, based on a notice to quit [5] served during pendency of the first, encountered appellant's accusation that it was retaliatory.[6] At a consolidated trial, a jury found substantial housing code violations in the first action [7] but returned a verdict for appellee in the second.[8]

The trial judge, on appellant's motion, stayed execution of its judgment of possession while appellant appealed,[9] but conditioned the stay upon payment into the registry of the court of $72.50 monthly, the amount of monthly rent specified in the lease. Contesting that condition from the outset, appellant disregarded it and a writ of restitution subsequently issued. The District of Columbia Court of Appeals refused to disturb the protective order and the controversy over it came here.[10] We have already resolved affirmatively our jurisdiction to entertain it.[11]

Appellant's arguments focus on the size of the deposits the trial judge ordered. Despite the fact—established by the jury's unchallenged finding [12]—that substantial violations of the Housing Regulations have persisted from inception of the lease, the deposits were fixed in an amount equal to full rent for the apartment. The judge's order was entered in chambers, without a prior hearing affording the parties an opportunity to present evidence and oral argument. The problems we confront, then, are "an order recognizing an obligation to deposit what is tantamount to standard rent for substandard housing," [13] and the methodology employed in framing it.

1. Cooks v. Fowler, 141 U.S.App.D.C. 236, 437 F.2d 669 (1970), supplemental opinion, 147 U.S.App.D.C. 213, 455 F.2d 1281 (1971).

2. *Id.* at 238, 437 F.2d at 671.

3. Housing Regulations of the District of Columbia (1956), sometimes hereinafter cited "Housing Regulations."

4. See Javins v. First Nat'l Realty Corp., 138 U.S.App.D.C. 369, 428 F.2d 1071, cert. denied, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970) ; Brown v. Southall Realty Co., 237 A.2d 834 (D.C.App. 1968), appeal denied, No. 21,874 (D.C. Cir. July 16, 1968), cert. denied, 393 U.S. 1018, 89 S.Ct. 621, 21 L.Ed.2d 562 (1969).

5. See D.C.Code § 45–910 (1967).

6. See Edwards v. Habib, 130 U.S.App.D.C. 126, 397 F.2d 687 (1968), cert. denied, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969).

7. No appeal from the judgment in that case has been taken, and it is undisputed that the apartment is in substandard condition.

8. In that action, appellant asserted a set-off on the premise that the housing code infringements constituted a breach of the landlord's implied warranty of habitability, see Javins v. First Nat'l Realty Corp., *supra* note 4, and diminished the occupancy value of the premises. The trial judge, deeming the evidence too speculative to enable a jury determination of the reduced value, directed a verdict for appellee on that claim.

9. See note 10, *infra.*

10. The appeal in the second action on the merits, of course, went to the District of Columbia Court of Appeals, where it is now pending.

11. Cooks v. Fowler, *supra* note 1, 141 U.S. App.D.C. at 238–239, 437 F.2d at 671–672.

12. See note 7, *supra*, and accompanying text.

13. Cooks v. Fowler, *supra* note 1, 141 U.S. App.D.C. at 240, 437 F.2d at 673.

## I

This case marks our first occasion to scrutinize on the merits the criteria and practices utilized by a trial judge in fashioning a protective order pending appeal of landlord-tenant litigation. In Bell v. Tsintolas Realty Company [14] we defined the role that protective orders may play prior to trial, and in *Cooks I* we elucidated the bases upon which we predicated our own order protecting the landlord while the trial court's protective order underwent testing here.[15] We are now called upon to ascertain the legitimate function of such orders in the appellate process and the trial court procedures befitting their formulation.

█ We think it clear that in appropriate situations trial judges may specify protective conditions as accompaniments of stays of eviction pending appeal. In *Bell*, after examining the countervailing factors,[16] we approved the use of the pretrial protective order "in limited circumstances" [17] in full realization that it "represents a noticeable break with the ordinary processes of civil litigation, in which, as a general rule, the plaintiff has no advance assurance of the solvency of the defendant." [18] We concluded that "in recognition of the emerging non-summary nature of the suit for possession, the concomitant severe disadvantage in which the landlord has been placed during such litigation, and the potential for dilatory tactics which judicial innovation

in this area has bred, . . . the prepayment of rent requirement as a method of protecting the landlord may be employed in limited fashion."[19]

█ It seems evident that much the same set of considerations authorizing imposition of protective conditions at the pretrial stage may similarly justify a protective order pending appeal. As we observed in *Cooks I*, while a pretrial request for such an order confronts "the extraordinary character of prejudgment security deposits in American jurisprudence," [20] the fact is that "[p]ost-judgment security requirements, such as the familiar supersedeas bond, are by no means unusual. . . ." [21] But this is not to say that protective orders become automatically available when sought pending appeal, or that the relevant criteria are necessarily those which govern pretrial orders. We adverted in *Bell* to "[t]he primary distinction to be made . . . between the preliminary and appellate stages of the litigation," [22] and in *Cooks I* we admonished that "the historical era of the litigation—pretrial or pending appeal—during which a protective order is to operate can make for a difference in the bundle of factors calling for recognition." [23] Thus, as we said in *Bell*, "if the landlord has been accorded a summary judgment, . . . or other judgment on the merits, the case for requiring prepayment of rent is strengthened," [24] while "if the tenant prevails at the

---

14. 139 U.S.App.D.C. 101, 430 F.2d 474 (1970).

15. 141 U.S.App.D.C. at 239–242, 437 F.2d at 672–675.

16. Those factors, we found in summary, were "that such a prepayment requirement is extraordinary in the course of civil litigation, that it has a tendency indirectly to constrict the tenant's right to proceed *in forma pauperis*, a right which equal protection considerations have recently led us to defend, that it carries with it, especially in the context of landlord-tenant litigation, a substantial risk of precluding litigation of meritorious defenses, [and] that it also carries a substantial risk of upsetting the precarious

balance of tactics in landlord-tenant litigation. . . . " 139 U.S.App.D.C. 108, 430 F.2d at 481.

17. *Id.* at 106, 430 F.2d at 479.

18. *Id.* (footnote omitted).

19. *Id.* at 109, 430 F.2d at 482.

20. 141 U.S.App.D.C. at 241, 437 F.2d at 674.

21. *Id.* (footnote omitted).

22. 139 U.S.App.D.C. at 110, 430 F.2d at 483.

23. 141 U.S.App.D.C. at 241, 437 F.2d at 674.

24. 139 U.S.App.D.C. at 110, 430 F.2d at 483 (footnote omitted).

trial level, any prepayment order will be discontinued." [25]

These examples, however, do not obscure the basic similarity of the trial court's responsibilities in less obvious situations. Whether the occasion arises pretrial or post-trial the court is empowered to "fashion an equitable remedy to avoid placing one party at a severe disadvantage during the period of litigation." [26] On each the court is summoned to balance the equities of the parties, and if need be to safeguard them from possible injury during further litigation.[27] And on each "we foresee that normally, the burden of . . . a prepayment order on the tenant will be neither heavy nor unexpected; to require that the tenant meet current rental payments during the litigation is to require only that he fulfill an obligation which he voluntarily assumed at an earlier date when he entered into the lease." [28]

In the case at bar we felt, in *Cooks I*, that a protective order should accompany our stay of eviction pending appellant's appeal. We conclude, for much the same reason, that the trial judge was well within the domain of his discretion when he imposed a protective condition as an incident of the stay he granted. With the jury's verdicts as they were, the equities favored neither party especially; as we pointed out in *Cooks I*, the *Bell* "standards do not accommodate the situation at hand since the tenant prevailed on the issue of housing code violations and the landlord on the issue of repossession via notice to quit." [29] And in *Cooks I* we rejected the idea "that the jury's finding that there existed substantial housing code violations at the commencement of the lease precludes imposition of a protective order in this case." [30] For while under the holding in Brown v. Southall Realty Company [31] such violations voided the lease ab initio, the landlord had an outstanding judgment for possession predicated upon a notice to quit, and the court could properly effectuate an obligation to secure the landlord arising from the tenant's retention of possession while prosecuting the appeal.[32] And as we said in *Cooks I*, "to the extent that it is incumbent upon the landlord, at [the appellate] stage, to show need for a protective order . . . we think that here it sufficiently appears." [33]

## II

Though the case was substantively amenable to a landlord's protective order of some type, there remains the question whether the particular order the trial judge entered is supportable. There is, too, the further question whether the procedural path the judge traveled in issuing the order can pass legal muster. We answer both questions in the negative.

The order here, we repeat, requires monthly deposits of $72.50 the amount appellant's lease called for as rent

25. *Id.*

26. *Id.* at 109, 430 F.2d at 482 (footnote omitted).

27. The balance may, as here, eventuate in a stay of eviction for the tenant and a protective order for the landlord.

28. Bell v. Tsintolas Realty Co., *supra* note 14, 139 U.S.App.D.C. at 109, 430 F.2d at 482. Compare Cooks v. Fowler, *supra* note 1, 141 U.S.App.D.C. at 241, 437 F.2d at 674. See also Javins v. First Nat'l Realty Corp., *supra* note 4, 138 U.S.App.D.C. at 381 n. 67, 428 F.2d at 1033 n. 67.

29. 141 U.S.App.D.C. at 241, 437 F.2d at 674.

30. *Id.* at 242, 437 F.2d at 675.

31. *Supra* note 4.

32. See Cooks v. Fowler, *supra* note 1, 141 U.S.App.D.C. at 242, 437 F.2d at 675.

33. *Id.* at 241, 437 F.2d at 674. That observation, however, was made in reference to a factually uncontroverted showing by a motion filed by respondent in this court. That motion, as we explained, portrayed the landlord as a 79-year-old widow, the mother of two incompetent adult sons, dependent upon the rental income from the apartment building, as to which there was a growing operating deficit which at the time of trial exceeded $3,500. *Id.* n. 25. The apparent failure to make that showing in the trial court is a different matter, which we comment on in note 53, *infra*.

for the apartment. The jury's finding that from the beginning of appellant's occupancy there were serious infractions on the Housing Regulations had the effect of nullifying the lease as a binding contract.[34] It also had additional effect as a breach of the landlord's implied warranty of habitability of the leased premises,[35] entitling the tenant to at least a partial abatement of rent for continued occupancy.[36] So analyzed, the incongruity of the trial judge's protective order and the tenant's rent obligation at once becomes manifest.

■■ Judicial protection of the landlord, whether pretrial or post-trial, can be justified only within the area of fair compensation for the possession he loses during the period of litigation. A protective order is unsustainable insofar as it requires the tenant to deposit as security more than the landlord could legitimately claim on that account. In *Bell*, we recognized that while pretrial protective orders might in ordinary circumstances command deposits of the rent contracted for,[37] "[c]ertainly a lesser amount would be desirable when the tenant makes a very strong showing that the condition of the dwelling is in violation of Housing Regulations norms."[38] In *Cooks I*, we held, with respect to our interim protective order, that our *Javins* decision[39] set the standard for determining the amount of the tenant's monthly deposit: "what portion, if any or all, of the tenant's obligation to pay rent was suspended by the landlord's breach."[40] We adhere to that standard as the yardstick for measuring deposits under protective orders pending appeal. That means that the amount of rent specified in the lease will provide not only the upper limit of the deposit but also the base from which reductions because of housing code infringements are to be made.

We lack specific information as to the reasons which induce the trial judge to fix the amount of appellant's security deposits at full rent. We are not benefitted by a statement in that regard,[41] and the record before us does not otherwise pinpoint the basis therefor.[42] We realize that the ruling may have been prompted by the judge's view that the evidence at trial was too imprecise to enable the jury to ascertain the reduced occupancy value of the apartment without speculating, the assessment leading to a directed verdict for the landlord on the tenant's set-off in the first suit.[43] That explanation, however, could mean only that the judge felt that the amount of deposits under a protective order had to rest on evidence of a calibre sufficient to underpin a verdict on a claim of setoff.[44] Such a theory, we think is at variance with the function of such deposits in the scheme of protective orders.

■■ Security deposits serve only as elements of an interim arrangement—for

34. Brown v. Southall Realty Co., *supra* note 4, 237 A.2d at 836–837.

35. Javins v. First Nat'l Realty Corp., *supra* note 4, 138 U.S.App.D.C. at 375–380, 428 F.2d at 1077–1082.

36. *Id.* at 380–381, 428 F.2d at 1082–1083.

37. 139 U.S.App.D.C. at 111, 430 F.2d at 484.

38. *Id.*

39. *Supra* note 4.

40. 138 U.S.App.D.C. at 380–381, 428 F. 2d at 1082–1083.

41. The statement referred to in the opinion of our dissenting colleague, *post* p. 1277, accompanied and elucidated only the ruling in consequence of which the judge directed a landlord's verdict on the set-off the tenant asserted.

42. We do not have the entire record. But since the trial judge's order was issued in chambers without a hearing or a statement of reasons, we cannot presume that even the full record will solve the dilemma.

43. See note 8, *supra*. The judge's statement accompanying the ruling is set forth in full in the dissenting opinion, *post* p. 1278.

44. As recognized in the judge's statement, *post* p. 1277, appellant's apartment had not been maintained in standard condition. And while the trial judge felt that the evidence appellant put in was insufficient to require submission of the issue on set-off, in the very same action the jury nonetheless found Housing Code violations.

the landlord's protection—pending a judicial determination to be made at trial or on appeal. In no sense do they represent or necessitate any final adjudication of rights of the parties, but rather a preliminary appraisal as to how they may ultimately eventuate. The provisional nature of the deposits thus differs drastically from the terminal character of a monetary verdict, and the dissimilarity points up a corresponding difference in the respective demands for precision in the underlying evidence. As much as other judgmental features of almost any protective order and any stay it accompanies,[45] the size of the security deposits need be, and usually can be, only an informed estimate.[46] Moreover, the formulation of protective orders, including the setting of deposit amounts, is the responsibility, not of the jury, but of the judge.[47] Even though the trial evidence may preclude a jury verdict favorable to a tenant's set-off against rent, that circumstance does not warrant a judge's failure to consider a sum less than stipulated rent as the amount of protective order deposits.[48]

■ An even more fundamental difficulty is encountered when it is recalled that the judge issued his protective order without affording the parties a hearing, although appellant's motion for stay specifically requested one. We admonished in *Bell* that pretrial security deposits should be ordered "only on motion of the landlord, and only after notice and opportunity for a hearing on such a motion," [49] including "opportunity for oral argument by both parties,"[50] and our opinion clearly contemplated that evidence might be adduced.[51] We perceive nothing in law or logic that could vindicate a rule demanding less for protective orders pending appeal. As we observed in *Cooks I*, "[i]t may be that placing a monetary value upon an apartment in subpar condition will always be a difficult task," [52] and surely we found it so in this very case.[53] In many instances the ruling will of necessity be made on the basis of complex data, and the decision required of the court may well be one to which written submissions are not conducive. The order, moreover, in this respect and others, is to be tailored to fit the characteristic of the individual case.[54] These objectives can be assured only by provision of a hearing so structured as to enable the participants to address the question whether such an order should issue and

45. As we all know, stays and protective orders conditioning them must be framed on the basis of tentative showings and the preliminary evaluations they enable.

46. Compare Cooks v. Fowler, *supra* note 1, (supplemental opinion) at 147 U.S.App. D.C. at 213, 455 F.2d at 1281 et seq.

47. Compare Bell v. Tsintolas Realty Co., *supra* note 14. The judge may, of course, treat any relevant jury verdict as advisory. See Cooks v. Fowler, *supra* note 1, 141 U.S.App.D.C. at 242, 437 F.2d at 675.

48. Notwithstanding difficulties with the trial evidence, the tenant might have cured the deficiencies at a hearing, thus enabling the judge to make an informed determination as to the amount of the security deposits.

49. 139 U.S.App.D.C. at 106, 430 F.2d at 479.

50. *Id.* at 110, 430 F.2d at 483.

51. See *id.* at 111–112, 430 F.2d at 484–485. And see note 50, *infra*.

52. 141 U.S.App.D.C. at 243, 437 F.2d at 676.

53. See Cooks v. Fowler, *supra* note 1 (supplemental opinion). And a hearing would have furnished the landlord an opportunity to make her showing of financial need to the trial court rather than to us, see note 33, *supra*, and an opportunity for clarification of the apparent inconsistency between her assertion of need and her declaration that appellant's apartment would be removed from the rent market, a query we leave for the trial judge on remand. See Cooks v. Fowler, *supra* note 1, 141 U.S.App.D.C. at 238 n. 3, 241 n. 25, 437 F.2d at 671 n. 3, 674 n. 25.

54. Evidentiary submissions may or may not be in order. The need may be minimal where the judge has already been exposed to the relevant facts at a completed trial; in other cases, more may be required. The question in the first instance is one for the judge, to be resolved in the exercise of a sound discretion.

if so the further question as to what its terms should be.

We are unable, then, to identify an adequate basis for the size of the protective deposits the trial judge ordered. And with the denial of appellant's request for a hearing, we have no alternative to reversal of the order. We do not know whether the two problems are related or whether a hearing would have avoided them both. In any event, appellant was entitled to one, and it must be afforded now.

### III

Return of this matter to the Superior Court opens another of its aspects for possible consideration at the hearing. We dealt in *Cooks I* with the landlord's motion in this court for an order channeling appellant's payments directly to the landlord instead of into the registry of the trial court.[55] We denied the motion because of the particular form of relief requested and the substantive insufficiency of the showing made.[56] While we have no way of knowing whether the landlord will undertake any further effort of similar character, we offer, out of an abundance of precaution, the guidelines the parties and the court should observe in that event.

In *Bell,* we deemed "[o]f great consequence . . . the distinction between a complaint for possession based on nonpayment of rent and a complaint which seeks both possession and a judgment for rent in arrears."[57] We noted that in the former, which as a last re-

sort can be served merely by posting, no claim for rent can later be added.[58] The tenant's obligation to make pretrial deposits in such cases traces its origin, rather, to destruction of the summary nature of the landlord's possessory action in consequence of the tenant's demand for jury trial and the resultant possibility of financial harm,[59] and the goal of such deposits is the provision of security. These features of an action simply for possession have influenced our holdings that in the particular circumstances presented the pretrial payments ordered were to be deposited in court and not remitted directly to the landlord.[60]

The decisive factors do not change significantly when the protective order is adjunctive to a stay pending a tenant's appeal from a judgment for possession only. The judgment establishes the landlord's entitlement to repossession, but not to past or future rent. The tenant's responsibility for protective deposits arises from the continuing risk of financial loss incidental to the deprivation of repossession by reason of any interim stay of eviction.[61] Again, the end and aim of the protective order is security for the landlord, a prime factor underlying our declination in *Cooks I* to mandate direct payments to the landlord.[62]

These considerations have importance in any case where a landlord who has instituted a possessory-only action seeks resort during the litigation to monies deposited by a tenant in compliance with a protective order. The landlord's endeavor is recovery of possession of the

55. 141 U.S.App.D.C. at 243 n. 39, 437 F.2d at 676 n. 39.

56. *Id.*

57. 139 U.S.App.D.C. at 104, 430 F.2d at 477 (footnote omitted).

58. *Id.* at 104–105, 430 F.2d at 477–478, and sources cited in notes 7–8 thereof. The other form of action, we explained, always requires personal service of the tenant, who may file a counterclaim if he desires. *Id.* at 104, 430 F.2d at 477.

59. *Id.* at 109, 430 F.2d at 482. See text *supra* at note 19. This consideration sup-

ports our holding that a pretrial protective order cannot properly require payment of rent accruing prior to its entry. *Id.* at 110, 430 F.2d at 483.

60. See *id.* at 110, 112, 430 F.2d at 483, 485; Dorfman v. Boozer, 134 U.S.App. D.C. 272, 277–278; 414 F.2d 1168, 1173–1174 (1969).

61. It follows that a protective order pending appeal may serve only to secure the landlord against loss of income during the period of the appeal.

62. 141 U.S.App.D.C. at 243 n. 39, 437 F.2d at 676 n. 39.

leased premises but not rent therefor; his assertion of a monetary claim comes after immediate repossession is frustrated. Since at least some portion of the amount the tenant is ordered to pay is inevitably in dispute, remission of the payments directly to the landlord is never a feasible course. And since the purpose in-court deposits serve is security of the landlord against ultimate financial loss, his access to the deposited monies must normally await completion of the litigation when, as a rule, the rights of the parties to the fund can for the first time be soundly determined.

This does not mean, however, that in no conceivable situation can the landlord derive monetary benefit from the protective arrangement while the case is still in progress. It does mean that relief in that direction can be afforded only in the most pressing circumstances, and even then only to a very narrow degree. The court cannot justify a turnover to a landlord of any portion of the deposited fund actually in dispute, but neither can it justify retention in the registry of the court of a portion as to which the tenant's ultimate liability to pay is crystal clear and the landlord's immediate need is extreme. And while alteration of the fundamental character of the protective arrangement as a security rather than a collection device is not merely for the asking, the court's basic responsibility to do equity between the parties [63] leaves a small, sharply circumscribed area in which a turnover of some part of the fund might be vindicated.

■■■ These considerations, we believe, ordain the proper conclusion. Where, but only where, the court can say with complete certainty that the landlord will become entitled to a definite part of the in-court fund in any event, and the

landlord demonstrates convincingly so dire a need for that part as to persuade the court to exercise its equitable powers to afford him some relief, the court may, to just that extent, respond favorably to the landlord's request for disbursement from the deposited fund pendente lite. This rule contemplates, of course, that the competing claims of the parties will first be subjected to careful examination at a hearing after due notice, and that nonfrivolous claims of tenants to ultimate nonliability for any or all of the deposited monies will be scrupulously honored. And it goes without saying that the court's authority to order a turnover from the fund must be cautiously and sparingly utilized.

The protective order appealed from is reversed, and the matter is remanded to the Superior Court for further proceedings in conformity with this opinion.[64]

Reversed and remanded.

ROBB, Circuit Judge, *dissenting:*

I am unable to concur in the conclusions and the result reached by the majority.

In her answer to the complaint in the Court of General Sessions the defendant alleged that she was entitled to a set-off against her rent because the plaintiff's violations of the housing code diminished the value of the premises. After the evidence on the issue thus raised was presented before the jury, the trial court directed a verdict for the plaintiff on that issue.

The record before us contains a document entitled "Reasons for the Court Reversing its Original Ruling and Now Granting Plaintiff's Motion to Direct a Verdict on Defense of Set-off under the Theory of Javins v. First National Realty

---

63. See text *supra* at notes 26–27.

64. This disposition, of course, reinstates the trial court's stay of execution of the judgment for possession and aborts the writ of restitution issued thereon. It also delegates to the trial court control over the fund accumulated by appellant's deposits therein pursuant to the protective order we issued. The court will apply that fund to any liability on appellant's part to make deposits under a newly-fashioned protective order, which allowably may operate *nunc pro tunc* from the original date of the court's stay, and will give appellant a reasonable opportunity to make up any difference.

Corporation." As stated by the court, the reasons were as follows:

> The evidence of the defendant in this case with respect to housing violations which she claims existed during the term of her tenancy and for which she claims a set-off against all or part of the rent is so vague and imprecise that it cannot support a set-off against the rent on the theory of Javins v. First National Realty Corporation. To submit this question to the jury on the basis of such evidence would be to permit mere speculation.
>
> Viewed in its best light, it consists of this. From time to time during the course of the tenancy, the exact length of such periods not being stated, the premises were either not heated or poorly heated; there were cracks and holes in the plaster on the walls and ceilings of several rooms in the apartment; at one time one of the windows in one of the rooms was out (the exact length of time not stated); from time to time there was no hot water; some of the floors were uneven and some of the floor boards loose; for some indefinite period of time the door would not open and shut properly; for indefinite periods of time she was troubled by rats and roaches; on occasions there was some trouble with plumbing, the exact period of time not stated. The plaintiff's testimony, which was not rebutted by the defendant, showed that carpenters, plumbers, plasterers, heating experts, exterminators, all went to the premises in question, some of them on numerous occasions, to alleviate the defendant's complaints. The defendant's own witness from the housing inspector's office testified that on a number of occasions during the period of the tenancy, all alleged violations were abated by the landlord. There was no evidence of any unreasonable delay or neglect by the landlord in taking care of the complaints. There was no evidence of the extent to which, if any, the defendant was deprived of the use of the premises and absolutely no evidence of the difference in the value of the premises as the defendant claimed existed and its value without the alleged violations.
>
> As a matter of fact, the evidence was so indefinite as to extent of the violations at any one time and the length of the violations that it is difficult to see how even an expert could have made any worthwhile estimate of the loss in value to the defendant. But assuming such expert testimony is not necessary, the evidence is certainly not sufficient for any finder of fact to determine how much, if all or any, of the rent should be suspended by the alleged breaches of the landlord. Moreover, as I have indicated, the defendant does not deny that the landlord sent repairmen to her apartment on numerous occasions to take care of her complaints.
>
> For these reasons, the court does not believe there is sufficient evidence to submit the issue of set-off against the rent, under the theory of the Javins case, to the jury.

To me it is clear that the matter of alleged housing violations was presented and fully explored before the trial judge. He concluded that there was no evidence to justify a finding that the value of the premises had been diminished by the alleged violations. He explained the basis for his conclusion, and I think he was right. In the light of this conclusion an order directing the deposit of less than the stipulated rent would have been arbitrary and capricious. In my view also, since the matter had been fully litigated, a further hearing was unnecessary.

I respectfully dissent.