John F. STETS, Appellant,

v.

Starmanda B. FEATHERSTONE, Appellee.

No. 98–CV–714.

District of Columbia Court of Appeals.

Submitted April 27, 2000.
Decided May 18, 2000.

---

Bernard A. Gray, Washington, DC, filed a brief for appellant.

No brief was filed on behalf of appellee.

Before SCHWELB, FARRELL and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

In this appeal we review a protective order in a contested action for possession in the Landlord and Tenant (L & T) Branch of Superior Court. The order re-

quired the tenant to make monthly rental payments for the duration of the litigation, which has been stayed pending the outcome of a related administrative proceeding, directly to the landlord rather than, as is usual, into the registry of the court. The order also released to the landlord the rent payments which, by agreement between the parties, the tenant previously had deposited in the court's registry. We agree with the tenant that the L & T court erred in entering this order *sua sponte*, without proper notice and opportunity for the parties to be heard and without adequate justification. We vacate the order and remand for further proceedings.

## I.

Appellee Starmanda B. Featherstone, the landlord, sued her tenant, appellant John F. Stets, in L & T court for possession of real estate based on his non-payment of rent. After being served with the complaint, Stets filed a tenant petition with the Rental Accommodations and Conversion Division (RACD) of the D.C. Department of Consumer and Regulatory Affairs. In that petition Stets requested the establishment of a rent ceiling for his apartment and appropriate relief if the rent he had been charged exceeded the ceiling. Stets also claimed in his petition that there were housing code violations and fire hazards in or near his apartment, and that his landlord had retaliated against him after he notified her that a code violation existed.

In light of the pendency of the tenant petition before the RACD, Stets and Featherstone stipulated to the entry of an order staying the proceedings on the complaint for possession. *See generally Dray-*

*ton v. Poretsky Management, Inc.,* 462 A.2d 1115 (D.C.1983) (pursuant to doctrine of primary jurisdiction, possessory action in L & T Branch based on nonpayment of rent should be stayed until final outcome of agency challenge to rent level). The parties also agreed to the entry of a protective order prospectively requiring Stets to deposit his full monthly rent payments into the registry of the court until the conclusion of the action for possession. *See generally Davis v. Rental Assocs., Inc.,* 456 A.2d 820, 823–24 (D.C.1983) (en banc); *Bell v. Tsintolas Realty Co.,* 139 U.S.App. D.C. 101, 106, 430 F.2d 474, 479 (1970).

On the eve of the scheduled administrative hearing before the RACD, Stets dismissed his tenant petition. Featherstone promptly requested a court hearing to vacate the *Drayton* stay. Stets' counsel did not appear at the hearing, and the L & T court lifted the stay and granted Featherstone judgment for possession by default. Stets, however, refiled his tenant petition with the RACD and persuaded the court to set aside the default and reinstate the *Drayton* stay.[1]

Featherstone then moved for reconsideration of the lifting of the default judgment. She alleged that Stets had filed, dismissed and then refiled his tenant petition in bad faith knowing that Featherstone had been granted an exemption from the rent ceiling provisions of the Rental Housing Act. Featherstone further alleged that Stets had no defense to her complaint for possession and was merely seeking to delay the entry of judgment against him in the L & T court.[2] Featherstone appended to her motion a copy of a motion to dismiss Stets' tenant petition

---

1. It appears that Stets' counsel had notified the courtroom clerk in advance of the hearing at which the default was entered that he would be unable to appear at the appointed hour, and that this notification had been overlooked and not communicated to the court.

2. In addition to asking for reinstatement of the default judgment for possession and issuance of a writ of restitution, Featherstone's

prayer for relief requested "release [of] funds in the Registry of the Court to the plaintiff." Apart from this reference in the prayer, Featherstone's motion for reconsideration did not address the funds which Stets had deposited in the court's registry. Nor did the motion request modification of the rent payment protective order to which the parties had stipulated.

which she had filed with the RACD, in which she made similar allegations.

At the hearing on the motion for reconsideration, counsel informed the L & T court that a hearing examiner had just granted Featherstone's motion to dismiss the refiled tenant petition. The court inquired whether the *Drayton* stay was still necessary. Citing this court's opinion in *Drayton*,[3] Stets' counsel argued that the stay had to remain in effect until the administrative appeals process had been exhausted. The court next asked Stets' counsel to explain why he had withdrawn the original tenant petition just before it was about to be heard. Counsel explained that he had dismissed the first tenant petition because Stets needed to be out of town on the day set for hearing and the RACD had denied a continuance. Featherstone's counsel argued that Stets was engaging in delaying tactics, including the filing of a frivolous tenant petition.

█ Tacitly denying Featherstone's motion for reconsideration, the L & T court agreed that it could not lift the *Drayton* stay while Stets pursued his appeal from the dismissal of his tenant petition. But, the court stated, it was "concerned" that "a certain hardship may be upon the [landlord] in this particular case in light of the fact they're [sic] not receiving any of the rental payments for this property."[4] Consequently, the court decided *sua sponte* to modify the existing protective order so as to release to Featherstone all monies which Stets previously had paid into the court registry, and to require Stets to make all his future monthly rent payments under the protective order directly to Featherstone instead of into the court reg-

istry. Stets' counsel objected, pointing out that he had not been given notice that modification of the protective order would be considered at the hearing, that the landlord had not shown a need for modification, and that he had been afforded no opportunity to rebut any such claim of need. The court dismissed these objections and refused to stay its order pending Stets' appeal to this court.[5]

## II.

█ We are constrained to reverse the L & T court's order.[6] The court erred in modifying a protective order to which the parties had agreed so as to release to the landlord all funds which the tenant had deposited in the court registry and to require future rental payments to be made directly to the landlord; neither party had requested such a change (or any change) in the order, neither party was heard on whether it was justified, and, on the record before the court, requisite justification was lacking.

█ In possessory actions where the tenant raises defenses and the resolution is delayed, the L & T court frequently enters an order requiring the tenant to deposit disputed rental payments into the registry of the court until the conclusion of the litigation. This order "protects the landlord from forfeiture of income while unwanted tenants hold over in possession without paying rent. It also protects tenants successful in their litigation from forfeiting their lease at the conclusion of the litigation because they cannot make up for an unpaid deficiency." *Dameron v. Capitol House Assocs. Ltd. Partnership*, 431

3. See *Drayton*, 462 A.2d at 1120; *see also Mack v. Zalco Realty, Inc.*, 630 A.2d 1136, 1139–40 (D.C.1993).

4. The L & T court's written order explains that the court was "concerned w[ith] the technical maneuverings of [defendant] and economic hardships upon the [plaintiff]."

5. Protective orders in actions for summary possession in the L & T Branch are subject to

interlocutory appeal. *See McQueen v. Lustine Realty Co.*, 547 A.2d 172, 173 (D.C.1988) (en banc).

6. We note that Featherstone, who is not represented by counsel in this appeal, has not filed a brief or otherwise participated in this court. Accordingly, we decide this case based solely on the record on appeal and appellant's brief.

A.2d 580, 584 (D.C.1981), *rev'd on unrelated grounds, McQueen,* 547 A.2d at 174. Such a protective order is an equitable device "requiring the exercise of sound discretion on a case-by-case basis." *Davis,* 456 A.2d at 824 (quoting *Dameron,* 431 A.2d at 583). Because the order does not permanently dispose of the parties' rights to the monies paid under it, it may be entered without a full-fledged evidentiary hearing. *See Dameron,* 431 A.2d at 583–84; *McNeal v. Habib,* 346 A.2d 508, 513–14 (D.C.1975). Nonetheless, the order may be entered only upon motion of the landlord or tenant and only after notice and an opportunity for the parties to be heard. *See Haynes v. Logan,* 600 A.2d 1074, 1075 n. 2 (D.C.1991) (quoting *Bell,* 139 U.S.App. D.C. at 110, 430 F.2d at 483); *see also LaPrade v. Liebler,* 614 A.2d 546, 547 (D.C.1992) (although landlord is usually the movant, tenant also may seek protective order). In deciding on an appropriate order, the L & T court must weigh the landlord's need for interim protection and the merits of the tenant's defenses, among other factors. *See Haynes,* 600 A.2d at 1075 n. 2; *Bell,* 139 U.S.App.D.C. at 111, 430 F.2d at 484.

■ Ordinarily, when the tenant has asserted defenses that might necessitate an abatement of rent, the L & T court may not disburse funds from the registry until the possessory action is concluded and the parties' proportional rights to the funds have been determined in an evidentiary hearing. *See McNeal,* 346 A.2d at 514; *see also Habib v. Thurston,* 517 A.2d 1, 17–27 (D.C.1985). However, where no genuine dispute exists regarding the landlord's entitlement to a portion of the rent due under the lease, equitable considerations may justify the L & T court in ordering *partial* release of the uncontested amounts from the registry (or direct payment by the tenant) to the landlord *pendente lite,* subject to ultimate review at the *McNeal* hearing. In *Dameron,* 431 A.2d at 584–85, this court upheld such an interim protective order where the L & T court found after a hearing that the housing code violations which the tenants alleged were too trivial to justify rent abatement, and that the only genuine dispute concerned the incremental amount of a rent increase and not the base rental amount itself. *Accord Habib,* 517 A.2d at 24 n. 19, 27 (noting that partial interim release of rent to landlord may be appropriate where landlord's need for funds to pay mortgage and other expenses outweighs tenant's need for retention of sufficient monies in registry to fund potential abatement of rent for code violations). *Cf. Cooks v. Fowler,* 148 U.S.App. D.C. 245, 253, 459 F.2d 1269, 1277 (1971).[7]

While the L & T court may in some circumstances have discretion to order interim release of the *uncontested portion* of a tenant's rent payments from the court registry to the landlord, it is difficult to envision circumstances which would justify disbursement of the tenant's rent payments *in their entirety,* i.e., without retention in the registry of any portion pending the outcome of the case and prior to the evidentiary hearing and determination required by our decision in *McNeal,* 346 A.2d at 514. "Since at least some portion

---

7. In *Cooks,* the Circuit Court elaborated on the requirements for protective order payments to the landlord as follows:

Where, but only where, the court can say with complete certainty that the landlord will become entitled to a definite part of the in-court fund in any event, and the landlord demonstrates convincingly so dire a need for that part as to persuade the court to exercise its equitable powers to afford him some relief, the court may, to just that extent, respond favorably to the landlord's request for disbursement from the deposited fund pendente lite. This rule contemplates, of course, that the competing claims of the parties will first be subjected to careful examination at a hearing after due notice, and that nonfrivolous claims of tenants to ultimate nonliability for any or all of the deposited monies will be scrupulously honored. And it goes without saying that the court's authority to order a turnover from the fund must be carefully and sparingly utilized.

*Cooks,* 148 U.S.App.D.C. at 253, 459 F.2d at 1277.

of the amount the tenant is ordered to pay is inevitably in dispute," it would seem that "remission of the payments [in their entirety] directly to the landlord is never a feasible course." *Cooks*, 148 U.S.App.D.C. at 253, 459 F.2d at 1277.

 In this case the L & T court erred by not adhering to the foregoing principles when it undertook to set the terms of a new protective order. The court acted without being asked to do so by either party.[8] The parties had no notice that the existing order might be revisited. The court did not afford the parties "an adequate opportunity to argue the equities," *Dameron*, 431 A.2d at 584, and failed to inquire into either the merits of the tenant's claims of rent ceiling and housing code violations[9] or the exigencies confronting the landlord. The record is silent on these matters. The court thus amended the protective order without the requisite findings that there was no genuine dispute about the landlord's entitlement to even a portion of the rent, let alone the entire amount. Similarly, there was no adequate finding that the landlord had a pressing need for immediate receipt of the rent in lieu of retention of monies paid by the tenant in the registry of the court.

We must therefore vacate the protective order entered by the L & T court and remand for further proceedings consistent with this opinion. Stets argues that on remand we should require Featherstone to deposit the entire amount she has received pursuant to the vacated order into the registry of the court. We are, however, cognizant of the fact that two years have elapsed since the L & T court entered its order in this case. Developments occurring in that interval of which we are unaware—for example, appellate affirmance

of the dismissal of Stets' tenant petition—might render a repayment directive inequitable. Our decision is without prejudice to a future motion by the landlord for a new protective order allowing her to retain some or all of the funds she has received. We therefore refrain from ordering repayment ourselves and leave the issue of Featherstone's repayment obligation to the L & T court to decide. For similar reasons we refrain from ordering reinstatement of the original protective order to which the parties initially stipulated and instead leave that decision to the parties and the L & T court to resolve.

*So ordered.*

---

8. We do not consider the landlord's prayer for relief in her motion for reconsideration to constitute a request for modification of the protective order; it was merely a request that rents deposited in the registry of the court be disbursed in the event the court reinstated the default judgment for possession and thereby

concluded the possessory action in the landlord's favor.

9. The court was not advised as to the grounds on which a hearing examiner had decided to dismiss Stets' tenant petition before the RACD.