OPINION
{¶ 1} Appellant, T.T. ("mother"), appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, to grant legal custody of her three children to relatives.
 {¶ 2} The Butler County Children Services Board ("BCCSB")[1] removed T.M., dob 9/6/1996, S.M., dob 3/10/1998, and B.W., dob 11/29/2002, from their mother's custody in October 2004. Issues identified in this case included those associated with substance abuse and lack of stable housing.
 {¶ 3} The children were adjudicated dependent, and the two older children, T.M. and S.M., were placed in the temporary custody of the paternal grandmother and the youngest child, B.W., was placed in the temporary custody of the maternal great-grandparents.
 {¶ 4} In December 2005, BCCSB filed motions requesting the juvenile court place the children in the legal custody of their respective temporary relative placements. A magistrate granted legal custody to the custodians, and mother objected to the magistrate's decision. The juvenile court overruled the objections and adopted the decision. Mother now appeals the determination of legal custody, presenting three assignments of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT AWARDED LEGAL CUSTODY TO NON-PARENT RELATIVES WHEN NONE OF SAID RELATIVES HAD REQUESTED LEGAL CUSTODY, WHEN THEY TESTIFIED THAT THEY WANT THE CHILDREN TO BE WITH THEIR MOTHER, AND WHEN THE MOTHER WAS READY, WILLING, AND ABLE TO PROVIDE A PROPER HOME FOR HER CHILDREN[.]"
 {¶ 7} Mother asserts that an error occurred because BCCSB, citing R.C.2151.353(A)(3), filed the motions for legal custody on behalf of the proposed custodians. *Page 3 
When the motions were filed in December 2005, R.C. 2151.353 stated that the juvenile court may award legal custody to any person who filed a motion for legal custody before the dispositional hearing.[2] Mother asserts that the error in the failure of the proposed legal custodians to file the motions is compounded by the fact that the custodians want mother to have custody.
 {¶ 8} As we previously noted, the legal custody motions were filed in December 2005. Several evidentiary hearing dates were held to consider the motions in 2006 and the magistrate issued her decision in late September 2006. During that time, mother fully participated in the hearings with counsel and never raised with the juvenile court any issues regarding the fact that BCCSB and not the custodians themselves filed the motions for legal custody. Further, mother filed objections to the magistrate's decision granting legal custody, but did not raise the alleged error that BCCSB, rather than the proposed custodians, filed the legal custody motions.
 {¶ 9} Civ.R. 53(D)(3)(b)(ii) states that an objection to a magistrate's decision shall be specific and state with particularity all grounds for objection. Civ.R. 53 (D)(3)(b)(iv), states: "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Mother does not claim plain error here.
 {¶ 10} Accordingly, we find mother cannot assign as error the fact that BCCSB filed the legal custody motions on behalf of the proposed custodians. See Bamba v. Derkson, *Page 4 
Warren App. No. CA2006-10-125, 2007-Ohio-5192; cf., In re Moorehead
(1991), 75 Ohio App.3d 711, 717 (rationale underlying R.C.2151.353(A)(3) is to afford all parties the opportunity to receive adequate notice of all potential custodians in order to prepare for trial).
 {¶ 11} Mother also argues under her first assignment of error that the proposed custodians favored custody with mother, and mother was ready, willing, and able to provide a proper home for her children. We will address mother's contention that she was ready, willing and able to assume custody of her children under mother's second and third assignments of error.
 {¶ 12} As to mother's allegations concerning the custodians' alleged lack of commitment to legal custody, the record indicates that one of the proposed custodians expressed a favorable opinion about mother's parenting abilities.
 {¶ 13} The maternal great-grandmother was asked several times whether she would follow court ordes if awarded legal custody, and she answered in the affirmative. When asked if she was willing to take legal custody, she replied that she was willing, "but I'd rather that her mother would have her." The maternal great-grandmother said, "She. she's . . .I mean, she gave birth to the baby and she's perfectly capable of taking care of her. She is a very good mother."
 {¶ 14} The other custodian, the paternal grandmother, acknowledged that she would like the children to be with their mother, "if she was able to take care of her children." The paternal grandmother said, "Whatever the courts decide and whatever is best for my grandchildren is what I want. I'm not trying to hold them against nobody. * * * I just want to do whatever's best for these children."
 {¶ 15} We have reviewed the record and find no indication that the two proposed custodians, who served as temporary custodians for the children since late 2004, were unwilling to assume legal custody. The opinions or desires they expressed in reference to *Page 5 
mother's custody was not determinative of this case, but was part of the evidence provided to assist the juvenile court in its determination of the best interests of the children.
 {¶ 16} Mother also argues that she was unfairly characterized as unfit as a parent by implication based on the finding of dependency at the beginning of this case, and therefore, the juvenile court erred in not making an additional finding that she was unfit before granting legal custody to a nonparent.
 {¶ 17} Mother discusses In re C.R., 108 Ohio St.3d 369,2006-Ohio-1191, which involved a noncustodial parent who argued that his fundamental right to raise his child should not be taken away by implication and that it was unfair for a parent to be penalized for the neglect by the other parent. In re C.R. rejected the father's arguments, finding that an adjudication of abuse, neglect or dependency "is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." Id. at ¶ 23.
 {¶ 18} While mother emphasizes the dissent in In re C.R., the major flaw in mother's argument is the fact that she was the custodial parent who participated in the events that resulted in the children's removal and subsequent adjudication. In the case at bar, mother was not being penalized by implication for the actions of the other parent.
 {¶ 19} Mother's first assignment of error is overruled.
 {¶ 20} Assignment of Error No. 2:
 {¶ 21} "THE COURT ERRED AND ABUSED ITS DISCRETION WHEN IT AWARDED CUSTODY TO RELATIVES WHICH [SIC] WAS NOT IN THE CHILDREN'S BEST INTERESTS[.]"
 {¶ 22} Assignment of Error No. 3:
 {¶ 23} "THE COURT'S CUSTODY ORDER IS NOT IN THE CHILD'S [SIC] BEST INTERESTS AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]" *Page 6 
 {¶ 24} We will address both assignments of error together, as they both involve the same issues related to the weight of the evidence and the best interest determination.
 {¶ 25} Preponderance of the evidence is the appropriate standard for granting legal custody. In re Nice (2001), 141 Ohio App.3d 445, 455;In re D.R., Butler App. No. CA2005-06-150, 2006-Ohio-340, ¶ 9. "Preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value. In re D.R. at ¶ 9.
 {¶ 26} An appellate court reviews legal custody determinations for an abuse of discretion. Id. at ¶ 10; In re DP., Franklin App. Nos. 05AP-117, 05AP-118, 2005-Ohio-5097, ¶ 52. Abuse of discretion connotes more than an error of law or judgment, and implies that the trial court's decision was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 27} Credibility issues are critical in custody cases, and the demeanor and attitude of the witnesses may not translate into the record. Miller v. Miller (1988), 37 Ohio St.3d 71, 74; In re D.R.
at ¶ 12. Therefore, an appellate court affords deference to a judge or magistrate's findings regarding witness credibility. Id.; In reD.J., Butler App. No. CA2005-10-423, 2006-Ohio-2248, ¶ 7.
 {¶ 28} In addition, in determining whether a decision of a trial court is against the manifest weight of the evidence, an appellate court is guided by the presumption that the [juvenile] court's findings were correct. In re Peterson (Aug. 28, 2001), Franklin App. No. 01AP-381, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. Davis v.Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260.
 {¶ 29} It is well-established that a determination of the child's best interest remains the *Page 7 
primary standard to be applied in custody cases. In re Brown,142 Ohio App.3d 193, 198; In re T.G., Butler App. Nos. CA2005-10-444, CA2005-12-521, 2006-Ohio-5504, ¶ 16; see In re Bixler, Seneca App. Nos. 13-05-41, 13-05-42, 2006-Ohio-3533, fn. 1 (juvenile court relied upon R.C. 3109.04 to make its best interest determination and appellate court found that section to be sufficient to make a best interest determination).
 {¶ 30} The juvenile court indicated that it reviewed the best interest factors under R.C. 3109.04(F) as part of its best interest analysis and determination.
 {¶ 31} The juvenile court found that mother was opposed to a grant of legal custody to the temporary custodians and wanted the children returned to her. The father of the two older children did not participate in the proceedings. The father of B.W. is opposed to the motions and wanted the child returned to mother. See R.C.3109.04(F)(1)(a).
 {¶ 32} The two older children were interviewed by the magistrate in chambers, but B.W. was not interviewed, due to her age. The children's guardian ad litem submitted a written report that recommended legal custody be granted to the respective temporary custodians.
 {¶ 33} All three of the children resided in the temporary custody of their respective custodians since Oct. 21, 2004. The juvenile court found that the custodians foster contact between the children, and work together sufficiently to facilitate visits with mother. See R.C.3109.04(F)(1)(c).
 {¶ 34} The juvenile court found that the children are bonded with their temporary custodians and comfortable in their homes. The children also love their mother. The juvenile court noted that T.M. has "almost parental concerns regarding mother" and wants to live with her mother to help protect her. See. R.C. 3109.04(F)(1)(c) and (d).
 {¶ 35} The juvenile court found that the two older children are doing well in school. The magistrate noted that teaching personnel testified that S.M. has been less aggressive *Page 8 
and less angry at school. Both of the older children are in counseling and their custodian has facilitated attendance at counseling and school activities. See R.C. 3109.04(F)(1)(d).
 {¶ 36} The juvenile court noted that T.M. described for her therapist an incident in which mother's boyfriend, B.W.'s father, pushed T.M. down the stairs and into a wall. A psychiatrist overseeing the treatment for the two older children provided the juvenile court with a diagnosis for the two children and indicated that he had prescribed and was monitoring medications for them. The issues identified by the psychiatrist included depression, defiant disorders, and attention deficit hyperactivity. See R.C. 3109.04(F)(1)(d) and (e) and (h).
 {¶ 37} The juvenile court noted that mother has not successfully completed the case plan services to obtain custody of her children. Mother began intensive outpatient treatment for substance abuse issues, but was discharged from the program after she failed to return to the program. Mother reportedly tested positive for illegal drugs during this time. A test result positive for marijuana, cocaine, and benzodiazepines was discussed with mother shortly before she left the intensive outpatient program. Mother reportedly tested positive for marijuana in June 2006, when she was tested after a hearing date.
 {¶ 38} Mother failed to participate in individual counseling and did not complete the Development of Living Skills program. Mother acknowledged during one of the later hearing dates that she had to find a new place to live, but argued that she had maintained stable housing by living in the same home since November 2005. However, the juvenile court found that mother did not pay a substantial amount of the rent owed on her former rental, relied upon relatives to assist her with rent and utilities, and failed to demonstrate that she could live independently.
 {¶ 39} The older children's therapist stressed that the children need a stable, structured environment. The juvenile court observed that mother has demonstrated that she cannot provide the stability needed for her children. *Page 9 
 {¶ 40} The juvenile court found by a preponderance of the evidence that it was in the best interest of the three children to be placed in the custodians' legal custody. After reviewing the record, we find that competent, credible evidence supports the juvenile court's best interest determination. We disagree with mother's argument that she demonstrated that she was ready, willing, and able to take custody of her children, for the reasons outlined by the juvenile court and discussed above.
 {¶ 41} The juvenile court did not abuse its discretion when it found it was in the best interest of T.M. and S.M. to be placed in the legal custody of the paternal grandmother and in the best interest of B.W. to be placed in the legal custody of the maternal great-grandparents.
 {¶ 42} Mother argues here and to the court below that the paternal grandmother abuses illegal substances and is an inappropriate custodian for the two older children.
 {¶ 43} As we previously discussed, the lower court was in the best position to determine witness credibility. Credibility issues are critical in custody cases, and the demeanor and attitude of the witnesses may not translate into the record. Miller v. Miller,37 Ohio St.3d at 74. Therefore, an appellate court affords deference to a judge or magistrate's findings regarding witnesses' credibility. In reDR., 2006-Ohio-340 at ¶ 12; In re D.J., 2006-Ohio-2248 at ¶ 7.
 {¶ 44} The juvenile court apparently did not find the allegations made against the paternal grandmother credible or sufficient to change the disposition of the children in her care. We do not find error in this regard.
 {¶ 45} Mother's second and third assignments of error are overruled.
 {¶ 46} Judgment affirmed.
YOUNG, P.J., and BRESSLER, J., concur.
[1] The parties in this case have identified the children services agency involved in this case as the Butler County Children Services Board ("BCCSB"), and we will use that designation in this appeal.
[2] R.C. 2151.353 was amended after the motions were filed to include the language that the juvenile court may award legal custody to any person who files a motion for legal custody or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party, and certain other criteria is met regarding the proposed custodian's intent and understanding. See R.C.2151.353(A)(3). *Page 1