**In re O.H.W.**

[Cite as *In re O.H.W.*, 175 Ohio App.3d 349, 2008-Ohio-627.]

Court of Appeals of Ohio,
Twelfth District, Brown County.

No. CA2007–02–006.

Decided Feb. 19, 2008.

Scott T. Gusweiler, for appellees.

S.E., appellant, pro se.

Jeff Ferguson, guardian ad litem.

BRESSLER, Presiding Judge.

{¶ 1} Appellant is the mother of O.H.W., the minor child at issue in this case. Appellees are the minor child's paternal grandmother and step-grandfather. The child was born in October 1998. The child was exposed to unstable living conditions until appellant left the child with appellees in June 2001. It is unclear how the stay was initiated, but it is clear that it was through the mutual decision of appellees and appellant and not through any action of the state. O.H.W. has a guardian ad litem, but children services is not involved in this private custody dispute. Both parties stated during the initial hearing regarding custody that the purpose of appellant's decision to leave the child with appellees was to allow appellant to make arrangements to provide a more suitable environment for the child. Appellant left the state during this time and was gone for several weeks. She did make frequent phone calls to appellees to inquire as to the child's well being.

{¶ 2} After the child had been with appellees for approximately three weeks, appellees took the child to a doctor, who indicated that the child was significantly delayed developmentally. The doctor advised appellees that he believed the child was neglected and indicated his intent to contact children services. Thereafter, appellees filed a private motion for custody alleging neglect. Because appellant's physical whereabouts were unknown, appellees served appellant by publication and did not otherwise notify her of their attempt to gain custody of the child, despite the fact that she contacted them by telephone after the filing of the complaint. Emergency custody was granted to appellees, and a hearing was scheduled for August 27, 2001, at which appellant appeared and requested counsel.

{¶ 3} A hearing regarding custody was held on December 2 and December 23, 2002, and January 6, 2003. On January 29, 2003, legal custody was granted to appellees. During the course of the hearing, several health-care providers, including physicians and therapists, testified regarding the child's diagnosis with and treatment for an autism spectrum disorder. Significant evidence was presented regarding expensive controversial treatment not covered by insurance instituted by appellees at the recommendation of a developmental pediatrician.

{¶ 4} In its judgment entry determining custody, the trial court stated that the facts established by clear and convincing proof that the child was dependent and neglected. The court noted appellant's "present honest commitment to do everything seemingly asked of a mother" but found that this behavior "falls far short of the commitment needed by" the child. The court went on to note that appellees' relationship with the child was based not on money but on commitment to his care and needs, that appellant was unable to make the commitment that the child needs, and that the changes urged by her would be made to his detriment. The court stated that it found that "the child is neglected and dependent and that it is in the best interest that the legal custody of [the child] should be with his grandparents." The court ordered that appellant receive "liberal visitation."

{¶ 5} Appellant did not appeal this decision of the trial court. On May 5, 2003, appellant requested a new custody hearing. In August 2003, appellant requested an emergency hearing on visitation, alleging that appellees were interfering with her access to the child. After continuances, a hearing was set for October 2004. A new visitation schedule was ordered following this hearing. Again on August 5, 2005, this time pro se, appellant filed a motion for modification of custody. The motion was dismissed for failure of process on other parties. In November 2005, appellant again filed a pro se motion for modification of custody. A hearing occurred regarding this motion in March 2006, at which the child's guardian ad litem requested psychiatric evaluations of all parties. Appellant continued to file

documents pro se, including a motion for reconsideration, objections, and a motion for a new hearing. The motion for a new hearing, filed August 23, 2006, alleged that the trial court had not applied the correct standard in the initial hearing to justify granting legal custody to appellees. The magistrate overruled this request for a new hearing without explanation in a journal entry dated October 3, 2006. Appellant filed a late objection, dated October 24, 2006, to the magistrate's order. The trial court judge, in an entry dated January 12, 2007, found that all pending objections were either untimely or lacked merit or both and overruled the objections. Appellant purports to appeal from this decision overruling her objections to the magistrate's decision denying her request for a new hearing. She raises four assignments of error, as follows:

{¶ 6} Assignment of Error No. 1:

{¶ 7} "The juvenile court's denial of a new hearing to reconsider the adjudication was a gross abuse of discretion."

{¶ 8} Assignment of Error No. 2:

{¶ 9} "The refusal of a new hearing is an unconstitutional denial of my right to due process of law. The juvenile court owes me at least one round of due process."

{¶ 10} Assignment of Error No. 3:

{¶ 11} "The juvenile court erred and abused it's [sic] discretion when failing to use the proper standard for reviewing a due process violation that affected a fundamental right, my parental rights, which is strict scrutiny."

{¶ 12} Assignment of Error No. 4:

{¶ 13} "Omission of the adjudicatory phase of the proceedings is plain error."

{¶ 14} Appellant argues the merits of her objections to the magistrate's decision in her assignments of error. However, the sole issue before this court is the judge's decision to overrule appellant's objections. The magistrate's decision was filed October 3, 2006, the trial court judge adopted the order on October 10, 2006, and appellant's objections were filed October 24, 2006. Under Juv.R. 40(D)(3)(b)(i), an objection to a magistrate's decision is timely only if filed within 14 days after the magistrate's decision is filed. Therefore, appellant's objections were untimely, and the trial court judge did not err in overruling the objections. See *In re D.K.K.*, Champaign App. No. 2006–CA–4, 2006-Ohio-5576, 2006 WL 3030835, ¶ 23–25; *Bamba v. Derkson*, Warren App. No. CA2006–10–125, 2007-Ohio-5192, 2007 WL 2821800, ¶ 19.

{¶ 15} Appellant's appeal of the trial court's denial of her objections as untimely filed was timely filed with this court under App.R. 4. However, appellant's four assignments of error argue the merits of her motion for a new

hearing, filed during a currently pending motion for modification of custody, which argued under *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, that her due process rights had been infringed when the trial court failed to make a parental suitability determination in the original custody decision of January 2003. We reserve judgment on those issues because the arguments are not properly before us yet. Under App.R. 4(A), a party must file a notice of appeal within 30 days after the later of the entry of judgment or service of notice of judgment. When there is an objection to a magistrate's decision, under App.R. 4(B)(3), the time for filing a notice of appeal begins to run when the order disposing of the objection is entered, but only if the objections are *timely* filed. Because appellant's objections were not timely, appellant had 30 days from the time the trial court judge adopted the decision on October 10, 2006, to appeal the decision of the trial court on the merits. Further, even if appellant had timely appealed the trial court's October 10 decision, Juv.R. 40(D)(3)(b)(iv) prohibits a party from assigning as error on appeal, except as plain error, any factual findings or legal conclusions of the magistrate unless the party made a timely objection to it, which appellant did not. As a result, except on a claim of plain error, we would likewise be precluded from ruling on the merits of appellant's objections or the underlying motion. *Performance Const., Inc. v. Carter Lumber Co.*, Hancock App. No. 5–04–28, 2005-Ohio-151, 2005 WL 91638, ¶ 11; *In re T.M.*, Butler App. No. CA2007–01–019, 2007-Ohio-6034, 2007 WL 3348221, ¶ 9.

{¶ 16} The dissent argues that this court should apply the doctrine of civil plain error on the issue of the timeliness of appellant's objections in order to reach the merits of appellant's appeal, which are also the merits of her objections and underlying motion for a new hearing. We find that it is inappropriate to do under the circumstances of this case.

{¶ 17} Under the rules governing appellate procedure, in order for this court to exercise jurisdiction to review a decision of a lower court, the appeal must be timely. The issue of timeliness of the appeal can be resolved through analysis of the procedural posture of *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971. In that case, the trial court initially applied a best-interest-of-the-child standard when it designated a nonparent as the custodian of the minor child at issue. Id. at ¶ 8. The parent filed a motion for reallocation of custody. Id. at ¶ 9. The magistrate applied a best-interest-of-the-child standard and denied the motion for reallocation. Id. The parent objected to the magistrate's decision, arguing that the magistrate was required to apply a parental unsuitability test rather than the best-interest-of-the-child test. Id. at ¶ 10. The judge overruled the objection. Id. The parent appealed, and the court of appeals reversed and remanded, finding that the trial court erred in failing to

make a parental unsuitability determination, as required under *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047. *Hockstok* at ¶ 11.

{¶ 18} The Supreme Court affirmed this holding. Id. at ¶ 40. In doing so, the Supreme Court addressed the relevant issue of procedural posture. It stated:

{¶ 19} "[O]ur holding in this case does not change the well-established rule, codified in R.C. 3109.04(B)(1), that after the legal custody determination is made, the best-interest-of-the-child standard should be used for any custody modification petitions filed by a natural parent. A parent should be given only one unsuitability determination, which should come at the time of the legal custody hearing. After such a determination has established, or taken away, a parent's fundamental custodial rights, the focus must shift from the rights of the parents to the rights of the child. A child's rights are effectuated through the use of the best-interest-of-the-child standard for subsequent custodial modification requests." Id. at ¶ 35–39.

{¶ 20} In *Hockstok*, the Ohio Supreme Court acknowledged that the permanency of final orders is a paramount principle. Id. at ¶ 35. *Hockstok* outlined a specific exception to this general rule. We are bound to follow the rules of appellate procedure. App.R. 1. We should not be inclined to expand the exception to this rule beyond the circumstances arising in *Hockstok*.

{¶ 21} Appellant's motion for a new hearing argues that she is entitled to a new hearing regarding parental suitability separate and apart from her pending motion for modification of custody. *Hockstok* specifically instructs that a parental suitability determination must be made in the context of a legal custody hearing, which appellant currently has pending at the trial court level. *Hockstok* does not permit the trial court to entertain this motion for a new hearing separate from such a proceeding. In accordance with the procedural posture and specific statements of the Ohio Supreme Court in *Hockstok*, the trial court should be given the first opportunity to review the record during the course of the pending motion for modification of custody and decide whether a parental unsuitability determination was ever made or if appellant at some point waived her right to such a determination. The trial court will then apply either a parental suitability determination (if one has not yet been made) or a best-interests-of-the-child determination (if a parental suitability determination has already been made or waived) in deciding the motion. Only if the trial court determines that a best-interests-of-the-child standard applies will appellant's right to appeal arise under *Hockstok*. Therefore, although the trial court may have incorrectly made a determination regarding the merits of appellant's motion, it did not err in overruling the motion because, under *Hockstok*, appellant's arguments must be made to the trial court in the context of the currently pending motion for modification of custody and not through a motion for a new hearing.

Any right appellant may have to appeal from the actions of the trial court under *Hockstok* is not yet ripe for review, but will arise at the time that the trial court enters judgment on the currently pending motion.

{¶ 22} We note that the Supreme Court has instructed that the doctrine of civil plain error should be employed only when "error * * * seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, at syllabus. Having determined that the trial court was not incorrect in refusing to grant appellant a new hearing, we find that the decision to employ the doctrine of civil plain error would not change the outcome of this case for the benefit of appellant, and thus, the circumstances of this case do not rise to such a level as to seriously affect basic fairness. Consequently, we decline to employ civil plain error at this juncture.

{¶ 23} For the foregoing reasons, the decision of the trial court is affirmed.

Judgment affirmed.

POWELL, J., concurs.

WALSH, J., dissents.

WALSH, J., dissenting.

{¶ 24} The majority decides this case on the procedural basis that appellant's objections to the magistrate's decision were not timely, and therefore, she failed to preserve her right to appeal the magistrate's decision. I find that this reasoning is flawed in the context of this case. For the reasons that follow, I respectfully dissent.

{¶ 25} This case involves a private custody dispute. Appellant is a pro se litigant. The Ohio Supreme Court has stated "'that *pro se* litigants are presumed to have knowledge of the law and legal procedures and that they are held to the same standard as litigants who are represented by counsel'" in the application of rules of procedure. *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 354, 2003-Ohio-6448, 800 N.E.2d 25, ¶ 10, quoting *Sabouri v. Ohio Dept. of Job & Family Servs.* (2001), 145 Ohio App.3d 651, 654, 763 N.E.2d 1238. However, it is widely acknowledged that cases regarding parental custody involve issues of fundamental rights, and throughout such proceedings, parents are entitled to every procedural and substantive protection the law allows. See *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680.

{¶ 26} Appellant did technically file her objections outside the 14–day period permitted under Juv.R. 40(D)(3)(B)(i). But there were two errors at the trial court level that would allow this court to determine that the trial court abused its

discretion in overruling appellant's late objections. The first error is that the magistrate's decision was required to contain language informing appellant of the rule under which she could enter an objection and of her obligation to object in order to preserve her right to appeal. Specifically, Juv.R. 40(D)(3)(a)(iii) requires that a magistrate's decision include conspicuous language informing the parties that "a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Juv.R. 40(D)(3)(b)." This language was not included in the magistrate's decision denying appellant's motion for a new hearing. Thus, appellant was not formally apprised, as required under the rules, of the procedural rules for filing objections.

{¶ 27} Further, the judgment entry that arguably adopts the magistrate's decision is ambiguous at best or misleading at worst. It states:

{¶ 28} "Magistrate's Decision is effective upon approval by the Judge and the journalization by the Court. The parties have 14 days within which to file objections to the Magistrate's Decision or 10 days within which to file objections to the Magistrate's Order, which would operate as a stay of this order."

{¶ 29} Although the judgment entry purported to explain the procedural rules, it did not apprise appellant of the rule from which these obligations arise, and it ambiguously identified the date from which the time periods began to run. Notably, appellant's objections were filed 14 days after the date of the filing of the judgment entry, which is a reasonable mistake for a pro se litigant to make in light of the failure of the magistrate to include the language required under the rules directing appellant to the proper rule, and the compounding failure of the judge to clearly state the date on which the time period began to run. I believe that "[s]imple fairness requires that when the court * * * provides to a concerned parent notice of the procedural requirements to be met for protection of parental rights, that notice must be accurate, not misleading." *In re Adoption of Greer* (Mar. 16, 1993), Hancock App. No. 5–92–34, 1993 WL 75093 at *2. In this situation, the trial court abused its discretion in overruling appellant's objections as untimely because the court documents provided to appellant did not contain the required language and were misleading.

{¶ 30} In its decision overruling appellant's objections, the trial court specifically stated, "With regard to the objections of October 24, 2006, the Court finds that the objections go back to a variety of hearings [sic] one conducted January 9, 2003 and others in the past. The objections are neither timely filed, being entirely too late, are [sic] without merit on their allegations, or both." It appears from this statement that the trial court found that appellant's objections were

untimely because they related back to the original custody determination of January 2003.

{¶ 31} Appellant logically directed her arguments on appeal toward this issue of timeliness of her motion for a new hearing, which was addressed in her objections and by the judge in the decision overruling appellant's objections. Appellees in their brief do argue that the objections were untimely because they were filed outside the 14–day period under Juv.R. 40(D)(3)(B)(iii). However, this court should sua sponte address this issue under the theory of civil plain error.

{¶ 32} In the civil context, plain error is not favored. *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099. The Ohio Supreme Court admonishes that it should be applied only "in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Id. at syllabus. Because an error has occurred that so clearly implicates infringement of appellant's fundamental rights in this case, I am of the opinion this court should exercise its discretion. See, e.g., *In re McCain*, Vinton App. No. 06CA654, 2007-Ohio-1429, 2007 WL 914870, ¶ 25. Having found that appellant's objections were not untimely, I proceed to address the merits of appellant's assignments of error.

{¶ 33} The fourth assignment of error argues that the trial court improperly failed to bifurcate its adjudicatory and dispositional hearings regarding custody of the child. Appellant's brief reveals that she is confused regarding the procedural circumstances of this case. She does not appreciate the difference between a custody suit arising from a complaint filed by the state (through a county children services agency) and a private custody dispute.

{¶ 34} Appellant cites *In re Riddle* (1997), 79 Ohio St.3d 259, 680 N.E.2d 1227, for its statements regarding the adjudication of neglect or dependency in an agency-initiated proceeding. Despite appellant's misunderstanding of the procedure at issue in this case, *Riddle* remains applicable because the trial court purported in the original custody determination in the case at bar to make a finding of dependency and neglect, giving rise to appellant's confusion. In *Riddle*, the Ohio Supreme Court cautioned that "a neglect/dependency complaint should not be filed as a substitute for a custody action." The court stated that "a child who is receiving proper care pursuant to an arrangement initiated by the parent with a caregiver is not a dependent child under R.C. 2151.04(A)." The court stated that a "parent's voluntary act of placing the child with a responsible relative is an indicator of proper parental care, and does not support a finding that the parent is at fault" for purposes of a neglect proceeding under R.C.

2151.03(A)(2). Id. at 263, 680 N.E.2d 1227. In these situations, "the care furnished by the relative can be imputed to the parent." Id.

{¶ 35} Appellant argues that she is entitled to a new custody determination because the trial court omitted the "adjudicatory phase." She argues that the trial court conceded her parental fitness. She argues that the adjudication of neglect and dependency was unlawful because she was fit as a parent. She argues that her due process rights were violated when the trial court failed to consider the fundamental nature of her parental rights. She specifically argues that under *Riddle*, the trial court was foreclosed from finding that her child was either neglected or dependent because he was receiving proper parental care initiated by her.

{¶ 36} While appellant is correct that failure to bifurcate a permanent custody proceeding into separate adjudicatory and dispositional hearings amounts to reversible error, *Riddle* is not dispositive on this appeal. Because the state (i.e., children services) is not involved in these proceedings, the hearings do not amount to a permanent custody proceeding subject to the bifurcation requirement. As the Ohio Supreme Court directed in *Riddle*, there is a necessary distinction between a custody proceeding prosecuted by the state and a private custody dispute. The case at bar is a private custody dispute subject to juvenile court jurisdiction under R.C. 2151.23(A)(2) and is not required to be bifurcated. For these reasons, I would overrule this assignment of error.

{¶ 37} The third assignment of error argues that the trial court erred in failing to apply strict scrutiny to an alleged due process violation affecting her fundamental rights. Strict scrutiny is a standard that applies when a court reviews allegations that a statute or rule impinges on a person's fundamental rights, depriving the person of substantive due process. *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 39. In this case, appellant has not argued that any statutes have adversely affected her rights. Rather, she alleges that the procedures used by the juvenile court, as applied in this case, failed to protect her fundamental rights. Thus, appellant's claims give rise to *procedural* due process claims rather than *substantive* due process claims. Consequently, this assignment of error fundamentally misstates the law, and I would overrule it on that basis.

{¶ 38} Appellant's purported first and second assignments of error are basically issues arising under a single assignment of error, which argues that the trial court erred when it overruled her motion for a new trial. Under Ohio and federal law, "parents have a fundamental liberty interest in the care, custody and management of their children" that is protected by the Due Process Clause of the Fourteenth Amendment to the United State Constitution and Section 16, Article I of the Ohio Constitution. *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781

N.E.2d 971, ¶ 16, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. Because this is a constitutional right, any action by the state used to deprive the parent of the right must be fundamentally fair. *Hockstok* at ¶ 16, citing *Santosky* at 754, 102 S.Ct. 1388, 71 L.Ed.2d 599.

{¶ 39} In *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, the Ohio Supreme Court effectuated those restrictions by holding that "[i]n an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." *Perales* at syllabus. The court stated that "[a]lthough divorce custody proceedings involving disputes between two parents are logically best served by looking only to the welfare of the child, the court's scope of inquiry must, of necessity, be broader in R.C. 2151.23(A) custody proceedings between a parent and a nonparent, which bring into play the right of the parent to rear his own child." Id. at 96, 6 O.O.3d 293, 369 N.E.2d 1047. The court directed that once a trial court finds the existence of one or more of the factors, "it must indicate that a preponderance of the evidence militates against parental custody by making a finding of unsuitability."

{¶ 40} Appellees argued only that appellant's arguments were not timely, particularly because they related back to the original custody determination of the trial court made in January 2003. The Ohio Supreme Court has specifically addressed this issue in a case cited and discussed by appellant in her brief. See *Hockstok* at ¶ 34–39. The court noted at ¶ 35:

{¶ 41} "Unlike most areas of the law where permanency of final orders is a paramount principle, in child custody law, flexibility is often an overriding concern. Such flexibility is codified in R.C. 2151.011(B)(19), which defines the term 'legal custody' as 'a legal status that vests in the custodian the right to have physical care and control of the child * * * *subject to any residual parental rights, privileges, and responsibilities.*' This definition of legal custody is statutory codification of the principle that in child custody, permanency of final orders is not always of the highest priority."

{¶ 42} This is a fundamental difference between a permanent custody proceeding instituted by the state and a private custody dispute between a parent and a nonparent. In a grant of legal custody, the parent is not divested of her fundamental parental rights, and she can petition the court for modification at any time. Id. at ¶ 36. In *Hockstok,* the court held that because the appellant in that case retained residual parental rights and was denied the proper parental

unsuitability determination afforded in *Perales,* the case was required to be remanded for a proper suitability determination. Id. The court found that such an outcome was consistent with the Ohio jurisprudence holding that "in custody cases between a natural parent and nonparent, a parental unsuitability determination must be made and appear in the record before custody can be awarded to a nonparent. This result preserves the fundamental parental rights" never forfeited in this type of proceeding. Id.

{¶ 43} *Hockstok* and *Perales* indicate that reversible error exists where a parent is able to show that no parental suitability determination was made before custody was granted to a nonparent. For the foregoing reasons, I find that appellant's first and second assignments of error have merit. I would reverse the decision of the trial court and remand this case for a new hearing consistent with the law set forth herein.